**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

EMERSON QUIET KOOL CO. LTD., and
HOME EASY LTD.,

Plaintiffs,

v.

EMERSON ELECTRIC CO.,

Defendant.

C.A. No. 20-1449-LPS

**JURY TRIAL DEMANDED**

**DEFENDANT EMERSON ELECTRIC CO.'S**
**OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

Dated: March 5, 2021

ROPES & GRAY LLP

James R. Batchelder (*pro hac vice*)
James L. Davis, Jr. (*pro hac vice*)
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
T: 650-617-4000
F: 650-617-4090
James.Batchelder@ropesgray.com
James.L.Davis@ropesgray.com

Peter M. Brody (*pro hac vice*)
2099 Pennsylvania Ave., N.W.
Washington, DC 20006
T: (202) 508-4600
Peter.Brody@ropesgray.com

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     STATEMENT OF FACTS ........................................................................................ 2

        A.      The Parties' United States Marks ............................................................. 2

        B.      Emerson Electric's Registration and Enforcement of Chinese Marks.................. 3

III.    LEGAL STANDARDS ............................................................................................ 5

        A.      Dismissal Under Rule 12(b)(6) for Failure to State a Claim .................................. 5

        B.      Dismissal Under the Doctrine of *Forum Non Conveniens* ..................................... 6

        C.      Dismissal Under Principles of International Comity ............................................. 7

IV.     COUNTS I-VII FAIL TO STATE A CLAIM BECAUSE EMERSON
        ELECTRIC'S ALLEGED CONDUCT IN CHINA CANNOT VIOLATE THE
        AGREEMENT RE THE MARK'S REGISTRATION AND USE "IN THE
        UNITED STATES" .................................................................................................... 8

        A.      The 2011 Consent Agreement Governs Registration and Use of the Mark
                Only in the United States ....................................................................................... 8

        B.      Each Cause of Action Fails to State a Claim Because the Alleged
                Registration/Use/Enforcement of the Mark in China Cannot Violate the
                2011 Consent Agreement Governing Only United States Activity...................... 11

V.      COUNTS I-VII SHOULD BE DISMISSED UNDER PRINCIPLES OF *FORUM
        NON CONVENIENS* .................................................................................................... 14

        A.      Chinese Courts (the Dispute's Existing Forum) Are Adequate and
                Available ............................................................................................................... 14

        B.      Private Interest Factors Favor Resolution of the Dispute in China ...................... 15

        C.      Public Interest Factors Favor Resolution of the Dispute in China........................ 17

        D.      The Private and Public Interest Factors Outweigh Any Deference Owed to
                Plaintiffs' Choice of Forum ................................................................................... 18

VI.     COUNTS I-VII SHOULD BE DISMISSED UNDER PRINCIPLES OF
        INTERNATIONAL COMITY .................................................................................... 19

VII.    CONCLUSION........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alsoy v. Ciceksepeti Int. Hizmetleri Anonim Sirketi,*
    232 F. Supp. 3d 613 (D. Del. 2017) ..............................................................12, 13

*Auto-Owners Ins. Co. v. Midwest Agency,*
    No. 4:07-cv-00394, 2007 WL 2885345 (E.D. Mo. Sept. 27, 2007) .........................6

*Benihana of Tokoyo, Inc. v. Benihana, Inc.,*
    828 F. Supp. 2d 720 (D. Del. 2011)..........................................................................20

*Boyce Thompson Inst. v. Medimmune, Inc.,*
    C.A. No. 07C-11-217, 2009 WL 1482237 (Del. Super. Ct. May 19, 2009)............10

*Capitol Grp., Inc. v. Collier,*
    365 S.W.3d 644 (Mo. Ct. App. 2012) ......................................................................10

*Chesapeake Utilities Corp. v. Am. Home Assurance Co.,*
    704 F. Supp. 551 (D. Del. 1989)................................................................................5

*City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.,*
    624 A.2d 1191 (Del. 1993) .......................................................................................10

*Creel v. Ecolab, Inc.,*
    No. CV 12917, 2018 WL 5778130 (Del. Ch. Oct. 31, 2018)....................................9

*Delta Air Lines, Inc. v. Chimet, S.P.A.,*
    619 F.3d 288 (3d Cir. 2010)..............................................................................2, 17

*Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.,*
    Case No. 1:17-cv-01846 (D. Del) ..............................................................................3

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA,*
    623 F.3d 147 (3d Cir. 2010)...........................................................................6, 14, 17

*FMC Corp. v. Summit Agro USA, LLC,*
    No. CV 14-51, 2014 WL 6627727 (D. Del. Nov. 14, 2014) ...................................12

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply Inc.,*
    No. 2:96-CV- 32, 1998 WL 750351 (N.D. Ind. Mar. 31, 1998).............................20

*Harris v. Innovate Biopharmaceuticals, Inc.,*
    C.A. No. N19C-01-055, 2019 WL 5173782 (Del. Super. Ct. Oct 15, 2019),
    *aff'd,* 228 A.3d 1063 (Del. 2020)............................................................................10

*Hilton v. Guyot*,
  159 U.S. 113 (1895)..................................................................................................7

*Int'l Bus. Software Sol's. v. Sail Labs Tech., AG*,
  440 F. Supp. 2d 357 (D.N.J. 2006) ........................................................................2

*Jacobson Warehouse Co., v. Schnuck Mrkts., Inc.*,
  No. 4:17-cv-00764, 2017 WL 5885669 (E.D. Mo. Nov. 29, 2017) .........................13

*Jane Doe L.C. v. Aimbridge Hosp., LLC*,
  C.A. No. 19-1762, 2020 WL 5633363 (D. Del. Sept. 21, 2020) ...........................16

*Johnston Assocs., Inc. v. Rohm and Haas Co.*,
  560 F. Supp. 916 (D. Del. 1983)...........................................................................18

*Kier Const., Ltd. v. Raytheon Co.*,
  No. Civ. A. 19526, 2005 WL 628498 (Del. Ch. Mar. 10, 2005) ............................9

*Kisano Trade & Invest Ltd. v. Lemster*,
  737 F.3d 869 (3d Cir. 2013)..........................................................................2, 7, 19

*Lacey v. Cessna Aircraft Co.*,
  862 F.2d 38 (3d Cir. 1988)...................................................................................17

*Lacey v. Cessna Aircraft Co.*,
  932 F.2d 170 (3d Cir. 1991)...................................................................................7

*Linear Prods., Inc. v. Marotech, Inc.*,
  189 F. Supp. 2d 461 (W.D. Va. 2002) ..................................................................20

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
  825 F. Supp. 73 (D. Del. 1993)............................................................................20

*Mid-American Salt, LLC v. Morris Cty. Coop. Pricing Council*,
  964 F.3d 218 (3d Cir. 2020)...............................................................................5, 8

*Moore v. Corizon, LLC.*,
  No. 4:15-cv-597, 2015 WL 5813231 (E.D. Mo. Oct. 5, 2015)................................6

*MZL Capital Holdings v. TD Bank, N.A.*,
  734 Fed. Appx. 101 (3d Cir. 2018) ......................................................................10

*Orthotic & Prosthetic Lab, Inc. v. Pott*,
  851 S.W.2d 633 (Mo. Ct. App. 1993) ....................................................................9

*OS33 v. CenturyLink Comm's., LLC*,
  No. 4:17-cv-2603, 2018 WL 2267910 (E.D. Mo. May 17, 2018) ..........................11

*OSI Sys., Inc. v. Instrumentarium Corp.*,
  892 A.2d 1086 (Del. Ch. 2006)........................................................................10

*Paraschos v. YBM Magnex Int'l, Inc.*,
  130 F. Supp. 2d 642 (E.D. Pa. 2000) ...............................................................8

*Path to Riches, LLC v. CardioLync, Inc.*,
  290 F. Supp. 3d 280 (D. Del. 2018)................................................15, 17, 19

*Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*,
  44 F.3d 187 (3d Cir. 1994)................................................................................7

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).............................................................................. *passim*

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
  288 F.3d 548 (3d Cir. 2002)..............................................................................9

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996)..........................................................................................6

*S. Megga Telecomm's. Ltd. v. Lucent Techs., Inc.*,
  No. 96-357, 1997 WL 86413 (D. Del. Feb. 14, 1997)..............................15, 18

*Schaffran v. Mt. Vernon-Woodberry Mills*,
  70 F.2d 963 (3d Cir. 1934)................................................................................9

*Schuss v. Penfield Partners LP*,
  Civ. Action No. 3232, 2008 WL 2433842 (Del. Ch. June 13, 2008) ...............6

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)...................................................................................6, 15

*Suburban Bus. Prod., Inc. v. T.E. Schmitt Co.*,
  796 S.W.2d 77 (Mo. Ct. App. 1990)................................................................10

*Trone Health Servs., Inc. v. Express Scripts Holding Co.*,
  974 F.3d 845 (8th Cir. 2020) ..........................................................................12

*Warner Tech. & Inv. Corp. v. Hou*,
  No. 13-7415, 2014 WL 7409978 (D.N.J. Dec. 31, 2014).................................15

*Wilmot v. Marriott Hurghada Mgmt., Inc.*,
  712 Fed.App'x. 200 (3d Cir. 2017)..............................................................7, 17

*Zhu v Boston Sci. Corp.*,
  No. 14-542, 2016 WL 1039487 (D. Del. Mar. 15, 2016) ..................................6

**Statutes**

Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532 ..........................................................13

**Other Authorities**

Fed. R. Civ. P 12(b)(6)..........................................................................................................1, 2, 5

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Certified Translation of May 6, 2020 People's Republic of China Intermediate People's Court of Zhongshan City, Guangdong Province Civil Judgment |
| 2 | Trademark Electronic Search System (TESS) Result, U.S. Trademark Registration No. 111,931 |
| 3 | Complaint, *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*, Case No. 1:17-cv-01846, Dkt. 1, December 22, 2017 |
| 4 | Trademark Law of the People's Republic of China, Art. 31 (2013) available at https://www.wipo.int/edocs/lexdocs/laws/en/cn/cn195en.pdf |
| 5 | Feb. 22, 2021 Letter Brief of Emerson Quiet Kool Co. Ltd. and Home Easy Ltd., *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*, Case No. 1:17-cv-01846, Dkt. 104, February 22, 2021 |
| 6 | Certified Translation of April 24, 2020 CNIPA Re-examination Decision Regarding Cancellation of No. 8571479 "EMERSON QUIET KOOL" Trademark |
| 7 | Dun & Bradstreet Report re: Emerson Quiet Kool Co. Ltd. |
| 8 | Dun & Bradstreet Report re: Home Easy Ltd. |
| 9 | Dun & Bradstreet Report re: Home Easy Industrial Co. Limited Corporate Family Structure |
| 10 | Dun & Bradstreet Report re: Home Easy Industrial Co., Limited |
| 11 | HomeEasy Industrial Co "Global Marketing" Page, available at http://www.homeasy.net/#/sales |
| 12 | Certified Translation of Jan. 2, 2020 CNIPA Decision re Registration of the No. 25323977 "EMERSON QUIET KOOL" Trademark |
| 13 | Certified Translation of Mar. 26, 2020 CNIPA Decision re Invalidation Application against No. 29560444 "Emerson Quiet Kool" trademark |

Defendant Emerson Electric moves to dismiss Emerson Quiet Kool Co. Ltd. and Home Easy Ltd.'s (collectively, "Plaintiffs"') Complaint under Rule 12(b)(6), the doctrine of *forum non conveniens*, and principles of international comity.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Emerson Electric has lawfully registered, used and is currently enforcing its Chinese trademarks against Plaintiffs' parent entity in China. These Chinese proceedings were first filed in 2018, and the Chinese courts found Plaintiffs' parent entity to have infringed on May 6, 2020. *See* Dkt. 1 ("Compl.") ¶ 25; Ex. 1 (Zhongshan Intermediate Court Judgment). While the Complaint here alleges that Emerson Electric's registration, use and enforcement of Chinese trademarks **in China** violates a 2011 Consent Agreement, that agreement is explicitly limited to the "use and registration of the [EMERSON QUIET KOOL mark] **in the United States**." Compl. Ex. 2 at 1.[1] Indeed, Plaintiffs and their parent entity tellingly have never raised any arguments concerning this agreement in their defense of Emerson's infringement claim in the Chinese proceedings— presumably because even they realize it offers them no refuge from their infringing conduct there. Having struck out to date in China, Plaintiffs now file the instant action here in a transparent effort to circumvent the Chinese courts' rulings against them. This Court should reject Plaintiffs' attempt at a second bite at the apple, and dismiss the Complaint forthwith on any or all of the following independent grounds:

1. The Complaint should be dismissed under Rule 12(b)(6) because Emerson Electric's alleged activity **in China** cannot breach its obligations under the 2011 Consent Agreement, which addresses only the "use and registration of the [EMERSON QUIET KOOL mark] **in the United States**." Compl. Ex. 2 at 1. Plaintiffs' Complaint fails to state a claim under which relief can be

---

[1] All emphasis has been added unless otherwise noted.

granted because (1) the premise of each claim is that activity in China violates the 2011 Consent Agreement, yet (2) the alleged conduct **in China** cannot violate the 2011 Consent Agreement because its scope is explicitly limited to conduct "**in the United States**."

2. The Complaint should be dismissed under the doctrine of *forum non conveniens*. The Chinese courts in which the parties are already litigating are not only available and adequate forums, but they are also closest to the vast majority of the relevant witnesses/evidence as well as the locus of the alleged conduct.

3. The Complaint is a thinly-veiled attempt to relitigate issues of Chinese trademark law in this Court under Delaware law, and should be dismissed under principles of international comity.

## II.      STATEMENT OF FACTS[2]

### A.      The Parties' United States Marks

Since at least as early as 1890, Emerson Electric has continuously used its registered trademarks in connection with a wide range of products, including, without limitation, products that play a significant role in the temperature, humidity level and overall comfort of the home and related goods and services. Ex. 2 (U.S. Trademark Search - No. 111,931).

In 2009, Emerson Electric and Airwell Hong Kong Technologies Ltd. ("Airwell") signed a consent agreement (the "2009 Consent Agreement") regarding certain Emerson Electric trademark applications to resolve a rejection from the United States Patent & Trademark Office ("USPTO"). Compl. Ex. 1. Similarly, in 2011, Emerson Electric and Airwell signed a second agreement (the "2011 Consent Agreement") regarding Airwell's U.S. application for the mark

---

[2] To the extent it is argued that any of these facts goes beyond the four corners of the Complaint, they are relied on solely for the arguments raised herein under the doctrine of *forum non conveniens* and principles of international comity. *See Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 877-78 (3d Cir. 2013) (considering parties' FNC evidence); *Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 299-300 (3d Cir. 2010) (same); *Int'l Bus. Software Sol's. v. Sail Labs Tech., AG*, 440 F. Supp. 2d 357, 364 (D.N.J. 2006) (considering evidence regarding comity grounds).

EMERSON QUIET KOOL following a rejection from the USPTO. Compl. Ex. 2. The 2011 Consent Agreement addresses "Airwell's use and registration of the [EMERSON QUIET KOOL mark] **in the United States**" and discusses only U.S. trademarks, along with the USPTO's rejections. *Id.* at 1. Plaintiffs allege that Airwell's rights were ultimately assigned to Plaintiffs in 2017. Compl. ¶ 23. Plaintiffs are not signatories to the Consent Agreements, and it is disputed whether Plaintiffs are obligees and beneficiaries of the agreements.

In Dec. 2017, Emerson Electric sued Plaintiffs for trademark infringement in *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*, Case No. 1:17-cv-01846 (D. Del) ("2017 Case"). *See* Ex. 3 (2017 Case Complaint). Plaintiffs had recently begun selling and marketing air conditioning products and dehumidifying products under the U.S. trademark EMERSON QUIET KOOL, seeking to trade on the established goodwill of Emerson Electric as indicated by the similarity between the parties' United States marks:



*Id.* at 2-3. The 2017 Case is still pending.

### B.    Emerson Electric's Registration and Enforcement of Chinese Marks

Emerson Electric has registered multiple Chinese trademarks to protect its brand. These marks include the EMERSON word mark, the EMERSON stylized mark, and the EMERSON QUIET KOOL word mark (e.g., Chinese Trademark No. 8,571,479), among many others.

China utilizes a first-to-file system, awarding a mark to the registrant "whose registration is applied for earlier than the rest." Ex. 4, Trademark Law of China, Art. 31 (2013). Emerson Electric submitted its application for Chinese Trademark No. 8,571,479 ("Emerson Quiet Kool") on Aug. 13, 2010 and the Chinese trademark office registered the application on September 28,

2011. Ex. 5 at 42-43 (Plaintiffs' Results of Chinese TM search for "Emerson Quiet Kool"). On July 13, 2018, Plaintiff Emerson Quiet Kool Co. Ltd. ("EQK") brought a cancellation action before the China National Intellectual Property Administration ("CNIPA") to cancel this registration. Ex. 6 at 8-9. And on Aug. 22, 2018, Plaintiff EQK filed its first Chinese trademark application on the EMERSON QUIET KOOL mark, which is still pending. Ex. 5 at 38.

In March 2018, Emerson Electric (through its local counsel in China) recorded its Chinese trademark registrations with the General Administration of Customs of China to facilitate the detection of infringing goods.  In May 2018, Emerson Electric asked the customs office of Gongbei to detect any potential infringement. On May 28, 2018, the customs office of Gongbei contacted Emerson Electric regarding a shipment of products that appeared to infringe its trademarks. Ex. 1 at 40. On July 31, 2018, Emerson Electric brought an enforcement action in China against TCL, the owner of that shipment, in the Intermediate People's Court of Zhongshan City, Guangdong Province. *Id.* at 1. On Sept. 29, 2018, after learning that TCL was manufacturing the infringing goods for Plaintiffs' parent entity, Home Easy Industrial Co. Ltd. ("HEI"), Emerson Electric added HEI as a defendant. *Id.* As shown by Dun & Bradstreet Reports, Plaintiffs are subsidiaries to HEI. Exs. 7-10. Moreover, HEI's website (Ex. 11) lists Plaintiff EQK's webpage as a "Subsidiary Website" and Plaintiffs' address (Compl. ¶4) as HEI's U.S. arm of "Global Marketing."

On Apr. 11, 2019, the CNIPA rejected Plaintiff EQK's arguments regarding Emerson Electric's "Emerson Quiet Kool" trademark No. 8571479 in the cancellation proceedings. Ex. 6 at 9.  On May 9, 2019, Plaintiff EQK filed a reexamination application with CNIPA, which was further rejected on Apr. 24, 2020 by CNIPA. *Id.*

Plaintiff EQK also filed opposition and invalidation proceedings against Emerson Electric's other registrations/applications for EMERSON QUIET KOOL marks, but CNIPA

dismissed these proceedings on Jan. 2, 2020 and Mar. 26, 2020, respectively. Exs. 12-13.

On May 6, 2020, Plaintiffs' parent HEI was found to infringe Emerson Electric's "Emerson Quiet Kool" mark. Ex. 1 at 46-47.  On May 25, 2020, HEI appealed to the Guangdong Province High Court, and Emerson Electric subsequently cross-appealed on June 10, 2020.

In parallel to these appeals, Plaintiffs filed the instant complaint on Oct. 26, 2020.

## III.   LEGAL STANDARDS

### A.   Dismissal Under Rule 12(b)(6) for Failure to State a Claim

A court will grant a motion to dismiss under Rule 12(b)(6) "if, accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom there is no reasonable reading upon which the plaintiff may be entitled to relief." *Mid-American Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020); Fed. R. Civ. P. 12(b)(6).

As a preliminary matter, because there is no choice-of-law provision in the 2011 Consent Agreement, Delaware courts follow the Second Restatement's "most significant relationship" analysis to determine which substantive law applies to Plaintiff's breach claim. *Chesapeake Utilities Corp. v. Am. Home Assurance Co.*, 704 F. Supp. 551, 555 (D. Del. 1989). The Second Restatement sets forth five factors to consider in the context of the "time at which the contract was formed": (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* at 556.

Missouri substantive law should thus apply. Factors (a)-(b) and (e) favor the application of Missouri or Hong Kong law because Emerson Electric and Airwell were residents of those locations, respectively, and Emerson Electric's in-house representatives negotiated and signed the contract in Missouri. Compl. Ex. 2 at 1-2. Factors (c)-(d) favor Missouri law among those two options because the contract covers performance in the "United States." *Id.* at 1. But even if

Delaware law somehow applies to the 2011 Consent Agreement as Plaintiffs have previously asserted, the result would be the same under Delaware or Missouri law.

In both Missouri and Delaware, a breach of contract claim fails as a matter of law when the complaint's allegations do not demonstrate any breach of an explicit obligation imposed on defendant. *Moore v. Corizon, LLC,* No. 4:15-CV-597, 2015 WL 5813231, at *4 (E.D. Mo. Oct. 5, 2015) (granting motion to dismiss when contract's clear language excluded plaintiffs' claim); *Zhu v Boston Sci. Corp.*, No. 14-542, 2016 WL 1039487 at *4 (D. Del. Mar. 15, 2016) ("cannot sustain a breach of contract claim where there is no contractual underpinning for [the] alleged obligations").  Contract interpretation is a "question of law" in Missouri and Delaware, and courts have repeatedly held that a motion to dismiss is a proper vehicle to determine the meaning of contract language. *Auto-Owners Ins. Co. v. Midwest Agency*, No. 4:07-cv-00394, 2007 WL 2885345, at *1 (E.D. Mo. Sept. 27, 2007); *Schuss v. Penfield Partners LP*, Civ. Action No. 3232, 2008 WL 2433842, at *6 (Del. Ch. June 13, 2008) (dismissing complaint when "[p]laintiffs could not conceivably succeed in proving" breach based on contract).

### B.     Dismissal Under the Doctrine of *Forum Non Conveniens*

District courts have the discretion to "dispose of an action by a *forum non conveniens* ["FNC"] dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 163 (3d Cir. 2010) (affirming district court's grant of motion to dismiss on FNC grounds). Dismissal for FNC reflects a court's assessment of a "range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 723 (1996).

The party seeking dismissal has the initial burden of establishing that an adequate available forum exists. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). An alternative forum is "available" and "adequate" if "all defendants are amenable to process," and plaintiff's claim is cognizable in the courts of that forum. *Wilmot v. Marriott Hurghada Mgmt., Inc.,* 712 Fed. App'x. 200, 203 (3d Cir. 2017). The moving party must then demonstrate that "private interest" factors affecting the litigants' convenience and "public interest" factors affecting the convenience of the forum weigh in favor of dismissal. *Kisano,* 737 F.3d at 873.

A party moving to dismiss on *FNC* grounds is not required "to describe with specificity the evidence they would not be able to obtain if trial were held in the United States." *Piper Aircraft,* 454 U.S. at 258. Nor is the movant required to "submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum," as "[s]uch detail is not necessary." *Id.* Rather, the movant merely "must provide enough information to enable the [court] to balance the parties' interests." *Id.* Courts in this circuit routinely allow parties to present evidence outside the four corners of the Complaint to demonstrate *forum non conveniens. Id.*; *see supra* n.2.

### C.    Dismissal Under Principles of International Comity

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, (1895); *Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994) (vacating summary judgment order when district court failed to consider international comity issue). Numerous federal courts have dismissed cases "on the basis of comity," which is "in deference to the foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has

jurisdiction, in a spirit of international cooperation." *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000) (citing cases; dismissing on international comity grounds).

## IV.   COUNTS I-VII FAIL TO STATE A CLAIM BECAUSE EMERSON ELECTRIC'S ALLEGED CONDUCT IN CHINA CANNOT VIOLATE THE AGREEMENT RE THE MARK'S REGISTRATION AND USE "IN THE UNITED STATES"

Each claim of the Complaint is premised on an allegation that Emerson Electric's registration, use and/or enforcement of its Emerson Quiet Kool mark **in China** breached the 2011 Consent Agreement. *See* Compl. ¶¶ 38-40 (Count I), 44-45 (Count II), 50-51 (Count III), 55-57 (Count IV), 61 (Count V), 66-68 (Count VI), 70-72 (Count VII). Even assuming that the 2011 Consent Agreement were enforceable by Plaintiffs,[3] Plaintiffs still fail to show any violation of the agreement. The 2011 Consent Agreement addresses only the "use and registration of the [EMERSON QUIET KOOL mark] **in the United States**." Compl. Ex. 2 at 1. Consequently, Emerson Electric's alleged actions in China cannot have violated the Agreement, Plaintiffs have failed to state a claim upon which relief can be granted, and the Complaint should be dismissed.

### A.   The 2011 Consent Agreement Governs Registration and Use of the Mark Only in the United States

Even accepting as true Plaintiffs' allegations in the Complaint, "there is no reasonable reading upon which the plaintiff may be entitled to relief." *Mid-American Salt*, 964 F.3d at 226. In the 2011 Consent Agreement, Emerson Electric provided consent for Airwell (Plaintiffs' alleged predecessor-in-interest) to use and register the "EMERSON QUIET KOOL" mark **in the United States** given the USPTO's refusal to register the application in light of Emerson Electric's United States registrations:

> This Consent Agreement ("Agreement") is entered into and effective as of the last date written below … concerning **Airwell's use and registration of the Airwell Mark (as set forth below) <u>in the United States</u>**. … the parties agree as follows:

---

[3] The parties dispute, *e.g.*, whether Plaintiffs are successors-in-interest and whether Plaintiffs' alleged predecessors-in-interest abandoned the mark through non-use or breached the agreement.

1. **Airwell is the owner of U.S. Trademark Application** Serial No. 77/946976 (the "Airwell Application") **for the mark EMERSON QUIET KOOL** (the "Airwell Mark") for "portable compact residential window and wall room air conditioning units" (the "Airwell Goods")

2. **Emerson is the owner of: U.S. Trademark Registration No. 3,771,945** for the mark EMERSON for "environmental measuring, testing and monitoring instruments" and other goods more specifically set forth therein; **U.S. Trademark Registration No. 1,795,612** for the mark EMERSON for "compressors for use in refrigeration" and other goods more specifically set forth therein; and **U.S. Trademark Registration No. 1,742,773** for the mark EMERSON for "AC and DC adjustable speed drives for commercial and industrial use" and other goods more specifically set forth therein (together the "**Emerson Marks**").

3. The **U.S. Patent & Trademark Office has cited the Emerson Marks as bars to registration of the Airwell Application**.

4. The parties do not anticipate any confusion arising from the concurrent use of their respective marks on or in connection with their respective goods and/or services as provided by this Agreement.

5. Accordingly, **Emerson hereby consents to registration of the Airwell Mark in the Airwell Application and to use of the Airwell Mark**, in connection with the Airwell Goods….

7. In the event this Agreement is not accepted by the U.S. Patent & Trademark Office or does not obviate the Office's refusal to register the Airwell Application, the parties will work together to draft a consent agreement that will permit Airwell's registration of the Airwell Application.

Compl. Ex. 2 at 1-2. The 2011 Consent Agreement is incorporated into the Complaint (Compl. ¶¶13-15) and thus "may [be] considered" for this motion. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).  As indicated above, the Agreement repeatedly references U.S. registrations, U.S. applications, and the USPTO—consistent with the statement that the Agreement is limited to Airwell's use and registration "in the United States." The Agreement's plain language makes clear that it addresses the use and registration of the Emerson Quiet Kool mark only in the United States.[4] Indeed, the Agreement nowhere refers to marks in **any** other jurisdiction.

---

[4] Regardless of whether the first paragraph is considered a preamble or part of the body of the contract, it reflects the contract's meaning. *See, e.g., Schaffran v. Mt. Vernon-Woodberry Mills*, 70 F.2d 963, 965 (3d Cir. 1934) (finding recital and body of contract both indicated that parties contracted for a credit limit);  *Kier Const., Ltd. v. Raytheon Co.*, No. Civ. A. 19526, 2005 WL 628498, at *10 (Del. Ch. Mar. 10, 2005) (relying on preamble language to interpret terms in contract); *Creel v. Ecolab, Inc.*, No. CV 12917, 2018 WL 5778130, at *4 (Del. Ch. Oct. 31, 2018) (noting recitals "can be useful to explain the intended meaning of other terms"); *Orthotic &*

Notably, when Plaintiff EQK raised similar arguments concerning the scope of the 2009 Consent Agreement in the Chinese invalidation proceedings, the CNIPA found that the Consent Agreement "did not specify that its scope of validity involves China or the world…. " Ex. 13 at 9.

Because the language of the contract is unambiguous, extrinsic evidence is irrelevant and this issue should be decided on a motion to dismiss. *Capitol Grp., Inc. v. Collier*, 365 S.W.3d 644, 651 (Mo. Ct. App. 2012) ("Absent ambiguity, the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument without resort to extrinsic evidence."); *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993). "The case law is legion that motions to dismiss are appropriate vehicles by which to engage the Court in the construction of written contracts." *Boyce Thompson Inst. v. Medimmune, Inc.,* C.A. No. 07C-11-217, 2009 WL 1482237, at *5 (Del. Super. Ct. May 19, 2009)*; OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006) ("judgment on the pleadings is a proper framework for enforcing unambiguous contracts"); *Suburban Bus. Prod., Inc. v. T.E. Schmitt Co*., 796 S.W.2d 77, 79 (Mo. Ct. App. 1990) (affirming dismissal based on unambiguous contract).

Indeed, courts in the Third and Eighth Circuits consistently grant motions to dismiss when, as here, plaintiff's claim alleges breach only of an obligation not explicitly imposed by the contract. *See MZL Capital Holdings v. TD Bank, N.A.,* 734 Fed. Appx. 101, 105 (3d Cir. 2018) (affirming grant of a motion to dismiss after finding the contract did not impose the obligation allegedly breached); *Harris v. Innovate Biopharmaceuticals, Inc.*, C.A. No. N19C-01-055, 2019 WL 5173782, at *8 (Del. Super. Ct. Oct 15, 2019), *aff'd*, 228 A.3d 1063 (Del. 2020) (granting a motion

---

*Prosthetic Lab, Inc. v. Pott*, 851 S.W.2d 633, 640 (Mo. Ct. App. 1993) (finding party was bound by agreement due to preamble).

to dismiss and finding no breach of contract when defendant had satisfied the agreement's express terms); *OS33 v. CenturyLink Comm's., LLC*, No. 4:17-cv-2603, 2018 WL 2267910 at *10 (E.D. Mo. May 17, 2018) (granting motion to dismiss after finding defendant did not breach its obligation to provide written notice, which was limited to specific circumstances).

### B.      Each Cause of Action Fails to State a Claim Because the Alleged Registration/Use/Enforcement of the Mark in China Cannot Violate the 2011 Consent Agreement Governing Only United States Activity

In contrast to the unambiguous language of the 2011 Consent Agreement limiting its scope to the **United States**, the only conduct complained of in the Complaint is Emerson Electric's alleged registration, use and enforcement of **Chinese** marks **in China**. Specifically:

- Plaintiffs allege that Emerson Electric registered the Emerson Quiet Kool mark in China after executing the 2011 Consent Agreement. Compl. ¶¶ 24-25, 29, 36-38 (Count I), 44 (Count II), 50-51 (Count III), 55-57 (Count IV), 61 (Count V), 66-68 (Count VI), 70-72 (Count VII). Setting aside the fact that Emerson registered the mark in 2010—before the 2011 agreement (Ex. 5 at 42)—registration of a Chinese mark in China cannot violate the 2011 agreement concerning the "registration and use" of the mark "in the United States." Compl. Ex. 2 at 1.

- Plaintiffs allege that Emerson Electric improperly used the Emerson Quiet Kool mark in China. Compl. ¶¶ 27, 39-40 (Count I), 45 (Count II), 50-51 (Count III), 55-57 (Count IV), 66-68 (Count VI), 70-72 (Count VII). The only basis for Plaintiffs' allegation that the use was improper is the 2011 Consent Agreement. *Id.* Yet, here again, the Consent Agreement concerns only the "use and registration" of the mark "in the United States." Compl. Ex. 2 at 1.

- Plaintiffs allege that Emerson Electric improperly enforced its Emerson Quiet Kool mark in China. *See, e.g.,* Compl. ¶¶ 25-29, 61 (Count V). The only basis for Plaintiffs' allegation that the enforcement was improper is the 2011 Consent Agreement. The 2011 Consent Agreement

addresses the use of the mark only "in the United States." Compl. Ex. 2 at 1.

　　While Plaintiffs raise seven separate counts, each count is dependent on Emerson Electric's alleged breach of the 2011 Consent Agreement:

　　**Count I (Breach of Contract)**: Without a breach of the 2011 Consent Agreement, Plaintiffs fail to state a separate breach of contract claim. *See* Compl. ¶¶ 35-40.

　　**Count II (Breach of Implied Covenant of Good Faith and Fair Dealing)**: Without a breach of the 2011 Consent Agreement, Plaintiffs have failed to allege how Emerson Electric's registration and use of the mark in China could have been "unlawful" or breached an implied covenant of good faith and fair dealing. *See* Compl. ¶¶ 41-46 ("Defendant breached the implied covenant of good faith and fair dealing *in connection with the 2011 Consent Agreement*…").

　　**Count III (Unfair Competition)**: While Plaintiffs specify that Delaware law applies for Count II, Plaintiffs fail to allege what statute or state common law is violated by this alleged "unfair competition." Regardless of which law Plaintiffs intended to invoke, or which law actually governs this claim, Plaintiffs fail to allege how the registration and use of Chinese trademark rights in China could have been "unlawful" or constituted "unfair" competition without a breach of the 2011 Consent Agreement. *See* Compl. ¶¶ 47-52; *FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51, 2014 WL 6627727, at *14 (D. Del. Nov. 14, 2014) ("Only wrongful interferences will satisfy the tort, as some interferences are seen as justified or privileged under the aegis of competition…"); *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 855 (8th Cir. 2020) (requiring "unfair" competition). Indeed, as this Court has previously found, the foreign enforcement of foreign IP rights standing alone does not itself "lead to a claim of common law unfair competition." *Alsoy v. Ciceksepeti Int. Hizmetleri Anonim Sirketi,* 232 F. Supp. 3d 613, 619 n.10 (D. Del. 2017) (granting motion to dismiss unfair competition claim based on defendants'

filing of WIPO domain name dispute).

**Counts IV-V (Tortious Interference with Business Relations and Contract)**: Plaintiffs again fail to allege what particular statute or state common law has been violated and, in any event, also fail to allege how Emerson Electric's registration and use of the mark in China could have been "unlawful" or constituted some other tort that would have interfered with Plaintiffs' alleged business relations without a breach of the 2011 Consent Agreement. *See* Compl. ¶¶ 53-58. Likewise, Plaintiffs fail to allege what particular statute or state common law has been violated or how Emerson Electric's registration and enforcement of the mark in China could have been "wrongful" or constituted some other tort that would have interfered with Plaintiffs' alleged contracts without a breach of the 2011 Consent Agreement. *See* Compl. ¶¶ 59-63.

**Count VI (Violation of Delaware Deceptive Trade Practices Act** ("DDTPA"): Without a breach of the 2011 Consent Agreement, Plaintiffs have again failed to allege how Emerson Electric's registration and use of the mark in China could have been "unfair" or "deceptive." *See* Compl. ¶¶ 64-69; *Alsoy*, 232 F. Supp. 3d at 619 (dismissing claim and finding defendant's filing of WIPO domain name dispute was "not a deceptive trade practice covered by the DTPA").

**Count VII (Unjust Enrichment)**: Again, although Plaintiffs fail to allege what particular statute or state common law has been violated, regardless of the applicable law, Plaintiffs fail to state a claim with respect to their catch-all unjust enrichment allegation for the same reasons discussed above. Additionally, because Plaintiffs fail to allege an unjust enrichment cause of action separate from the alleged breach of the 2011 Consent Agreement, Plaintiffs fail to state a claim. *See* Compl. ¶¶ 70 (incorporating prior allegations into Count VII); *Jacobson Warehouse Co. v. Schnuck Mrkts., Inc.*, No. 4:17-cv-00764, 2017 WL 5885669, at *2 (E.D. Mo. Nov. 29, 2017) (dismissing unjust enrichment claims because plaintiff incorporated breach of contract allegations

into its quasi-contract claims and did not distinguish the latter as an alternative).

As to each count in the Complaint, Plaintiffs have failed to state a claim for which relief may be granted. The alleged registration, use and enforcement of the Emerson Quiet Kool mark in China by Emerson Electric cannot have violated the 2011 Consent Agreement, which governs the use and registration of the mark "in the United States." The Complaint should be dismissed.

## V.   COUNTS I-VII SHOULD BE DISMISSED UNDER PRINCIPLES OF *FORUM NON CONVENIENS*

As discussed in Part III above, Plaintiffs' parent was found to infringe Emerson Electric's "Emerson Quiet Kool" mark in China on May 6, 2020. Additionally, Plaintiff EQK's cancellation, opposition and invalidity proceedings filed between 2018 and 2020 regarding Emerson Electric's mark each failed. The Complaint is merely an attempt to enlist this Court, in effect, to override the decisions to date by the Chinese courts, even while those decisions are pending appeal in that country. Under the doctrine of *forum non conveniens* ("FNC"), Chinese courts are an adequate and available forum for these ongoing disputes, and the private and public factors weigh in favor of dismissal. The Complaint should be dismissed for this second, independent reason.

### A.   Chinese Courts (the Dispute's Existing Forum) Are Adequate and Available

Chinese courts are more than adequate and available forums for this dispute, particularly considering the continuing pendency of the dispute between Emerson Electric and Plaintiffs' parent entity as well as Plaintiff EQK's actions before the CNIPA. Given that Emerson Electric has availed itself of these forums adverse to Plaintiff EQK and Plaintiffs' parent, Emerson Electric is amenable to process in China. *Piper Aircraft*, 454 U.S. at 254 n.22 ("Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."); *Eurofins*, 623 F.3d at 160 (affirming district court's dismissal on FNC grounds). To the extent there is any doubt, Emerson Electric hereby consents to jurisdiction and service of

-14-

process in China for purposes of these disputes.

China is also an adequate forum because Plaintiffs' claims are cognizable in its courts. This court and numerous others have recognized China as an adequate forum in the context of a dismissal under FNC. *E.g.*, *S. Megga Telecomm's. Ltd. v. Lucent Techs., Inc.*, No. 96-357, 1997 WL 86413 at *11 (D. Del. Feb. 14, 1997) (dismissing breach of contract and unfair competition counterclaims implicating "complex issues of Chinese procedural and substantive law" on FNC grounds); *Sinochem Int'l*, 549 U.S. at 435-36 ("Judicial economy is disserved by continuing litigation in the [District Court] given the proceedings long launched in China."); *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *8 (D.N.J. Dec. 31, 2014) (dismissing breach of contract claim on FNC grounds after finding China an adequate forum for civil disputes).

Moreover, courts in the Third Circuit consistently have found that a forum is inadequate only in "rare circumstances" where the alternative forum is "clearly unsatisfactory"—which is "not a light" burden. *Path to Riches, LLC v. CardioLync, Inc*., 290 F. Supp. 3d 280, 287 (D. Del. 2018) (dismissing complaint on FNC grounds). Indeed, there is no affirmative duty for defendants to show that a forum permits litigation of the exact claims at issue. *Id.* Nevertheless, the parties are already litigating the infringement issue in China and Plaintiffs could have raised these same defenses and claims there, but chose not to do so. Because China is not "clearly unsatisfactory" and has been found adequate in numerous other dismissals, it is an adequate forum for this dispute.

### B. Private Interest Factors Favor Resolution of the Dispute in China

The private interest factors also weigh in favor of dismissal. Specifically, the considerations of the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive," each favors dismissal and

the Chinese forum. *Piper Aircraft*, 454 U.S. at 241 n.6. The majority of the relevant witnesses and sources of proof are in China. For example, key non-party witnesses including Chinese manufacturers and Port of Zhongshan employees are located in China, not Delaware. Compl. ¶¶ 25, 28, 54-55; Compl. Ex. 2. This Court cannot compel their presence or testimony in the District of Delaware. Much of the evidence pertinent to this case is also located in China, including evidence about Plaintiffs' 600+ air conditioner units allegedly held at the Port of Zhongshan, as well as evidence concerning Emerson Electric's Chinese trademarks and its use thereof. *See* Compl. ¶ 25. Most of the key witnesses are native Chinese speakers and would require a translator. Similarly, the Chinese documents would require translation. Indeed, the practical problem of the need to translate documents and witness testimony favors dismissal because translation increases the cost and impracticality of litigation in the U.S. Instead, Chinese courts are better-equipped to evaluate evidence/testimony within China's borders. *See Jane Doe L.C. v. Aimbridge Hosp., LLC*, C.A. No. 19-1762, 2020 WL 5633363, at *4 (D. Del. Sept. 21, 2020) (dismissing complaint on FNC grounds when witnesses, evidence, premises, and objects were in Jamaica).

Likewise, adjudication in China will be expeditious due to Plaintiffs' strong ties there. Plaintiff EQK consented to process in China in its 2020 trademark cancellation actions filed against Emerson Electric in the CNIPA. Exs. 6, 12-13. Moreover, both Plaintiffs are subsidiaries to HomeEasy Industrial Co. Ltd. ("HEI"), defendant in the Zhongshan Customs Court proceeding currently on appeal. Exs. 7-10 (Dun & Bradstreet Reports showing the relationships between HEI and Plaintiffs); Ex. 1 (Judgment of Zhongshan People's Court). Indeed, Plaintiffs assert that it was **their own products** that were the subject of the customs enforcement action brought by Emerson Electric in China. Compl. ¶¶ 25 ("[T]he Port of Zhongshan detained *Emerson Quiet Kool's goods*…"), 26, 30. In addition, Plaintiff EQK admits that it manufactures its products in China and

has contacts with multiple manufacturers there, including Midea and Gree. Compl. ¶¶ 28, 32.

Adjudication in China thus would be "easy, expeditious, and inexpensive" and the private interest factors favor dismissal. *Piper Aircraft*, 454 U.S. at 241 n.6; *Wilmot,* 712 F. App'x at 205 (finding that private-interest factors, *e.g.*, location of witnesses and evidence, favored dismissal).

### C.    Public Interest Factors Favor Resolution of the Dispute in China

The public interest factors also favor dismissal because the locus of the alleged culpable conduct was in China and, consequently, Delaware's interest in the dispute is minimal, if any. *See Delta Air Lines,* 619 F.3d at 294 (finding that public interest factors supported dismissal after determining "the locus of the alleged culpable conduct" was Italy, not Pennsylvania). The Supreme Court has indicated the following public-interest factors are relevant when determining whether to dismiss a complaint on FNC grounds:

> [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper *Aircraft*, 454 U.S. at 241 n.6. In addition, in evaluating the public interest factors, the district court must "consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988). These factors weigh in favor of dismissal.

China is the locus of the alleged culpable conduct: Emerson Electric's alleged registration, use, and enforcement of its marks in China. *See* Part V.B. Because all of these acts occurred in China, Delaware does not have a local interest in adjudicating Plaintiffs' claims. *See Wilmot*, 712 F. App'x at 205 (finding public interests weighed against the District of Delaware when the site of the alleged harm was Egypt); *Path to Riches*, 290 F. Supp. 3d at 294 (finding Delaware's interest

in overseeing those owing fiduciary duties to the shareholders of Delaware corporations was outweighed due to the locus of the alleged culpable conduct).

The parties' active parallel litigation in China also weighs in favor of dismissal in order to avoid "the possibility of incongruous results stemming from parallel actions." *Eurofins*, 623 F.3d at 163. In addition to the Zhongshan Customs Decision currently on appeal that Plaintiffs highlight in their Complaint (Compl. ¶¶ 25-26), Plaintiff EQK's trademark cancellation actions in China similarly weigh in favor of dismissal. Exs. 6, 12-13. Adjudicating the present dispute in parallel also would waste judicial resources and increase court congestion unnecessarily.

Moreover, adjudicating Plaintiffs' claims in Delaware would require the application of foreign law—again favoring dismissal. Through their claims, Plaintiffs seek to litigate in this Court whether Emerson Electric's alleged registration, use and enforcement of its Chinese trademarks in China was proper—clearly implicating issues of Chinese intellectual property law. *See S. Megga*, 1997 WL 86413 at *11 (cautioning against exercising jurisdiction over matters involving "Chinese intellectual property law" when dismissing breach of contract and unfair competition counterclaims). Additionally, while Plaintiffs allege that certain downstream harms occurred in the United States, Third Circuit courts apply the law of defendant's place of conduct rather than the place of injury for intentional torts. *Johnston Assocs., Inc. v. Rohm and Haas Co.*, 560 F. Supp. 916, 918 (D. Del. 1983) (applying law of defendant's place of conduct to tortious interference with contractual rights). Because the relevant conduct by Emerson Electric occurred in China, this Court would need to apply Chinese law to resolve Plaintiffs' intentional tort claims (*e.g.*, Tortious Interference with Business Relations and Contract)—again favoring dismissal.

### D.   The Private and Public Interest Factors Outweigh Any Deference Owed to Plaintiffs' Choice of Forum

In the Third Circuit, the presumption of convenience favoring a domestic plaintiff's chosen

forum is overcome when "the balance of the public and private interests clearly favors an alternative forum." *Kisano*, 737 F.3d at 873. Courts considering a motion to dismiss on FNC grounds focus on convenience rather than assigning "talismanic significance to the citizenship or residence of the parties." *Id.* at 875. Here, the private and public interest factors amply demonstrate that Delaware is not a convenient forum, which overcomes any convenience presumption normally awarded to domestically incorporated entities.

Likewise, organization under Delaware law does not grant a "bona fide connection" to Delaware sufficient to award full deference to a plaintiff's forum choice. *Path to Riches*, 290 F. Supp. 3d at 291 ("The entirety of [Plaintiff's] convenience argument is that it is organized under Delaware law, based in New York, and owned by New Yorkers. This is not enough…"). Here, the relevant Consent Agreement is between a Missouri corporation and a Hong Kong corporation without any relation to Delaware. Much of the key evidence and witnesses are located in China. While Plaintiffs are incorporated in Delaware, there is no "bona fide connection" to Delaware here.

## VI.  COUNTS I-VII SHOULD BE DISMISSED UNDER PRINCIPLES OF INTERNATIONAL COMITY

As discussed in Part V.B, the focus of the Complaint is on Emerson Electric's alleged registration, use and enforcement of its Chinese "Emerson Quiet Kool" mark in China against Plaintiffs' parent. While Plaintiffs' Complaint alleges state law causes of action, at base, it is merely an attempt to override the outcome of multiple proceedings in China. Under principles of international comity, these causes of action should be dismissed for this third, independent reason.

In particular, Plaintiff EQK already challenged Emerson Electric's "Emerson Quiet Kool" mark in China, asserting it should be cancelled. *E.g.*, Ex. 6. Yet, the Chinese tribunals rejected these arguments. Ex. 6. Similarly, Plaintiffs' parent entity was found to infringe Emerson Electric's "Emerson Quiet Kool" mark in China. Ex. 1. Indeed, the infringement is why Plaintiffs' products

were seized. Compl. ¶¶ 25-26; Ex. 1. Plaintiffs' parent's appeal of the infringement finding is currently pending.

After having been found to infringe in China on May 6, 2020, Plaintiffs filed the instant action on Oct. 26, 2020. Plaintiffs improperly ask this Court to review the registration, use and enforcement of Chinese trademark rights in China. Courts have repeatedly held such requests to be improper. For example, in *Mars*, this Court granted defendant's motion to dismiss unfair competition claims under principles of comity when the Court would otherwise need to determine whether a foreign defendant was prohibited from making or selling products in Japan under Japanese patent law. *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73, 75-76 (D. Del. 1993) (warning that plaintiff had "relabeled its [foreign patent infringement] claim as one of 'unfair competition'"); *aff'd*, 24 F.3d 1368, 1376 (Fed. Cir. 1994). *See also, e.g.*, *Linear Prods., Inc. v. Marotech, Inc.*, 189 F. Supp. 2d 461, 466 (W.D. Va. 2002) (citing cases and noting foreign countries have different legal standards, and that resolution of patent disputes related to foreign patents should not be decided by U.S. courts); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply Inc.*, No. 2:96-CV- 32, 1998 WL 750351, at *9 (N.D. Ind. Mar. 31, 1998) ("Only a foreign country can determine the validity and infringement of the patents which it issues."); *Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 730 (D. Del. 2011) (granting motion to dismiss foreign trademark infringement claims "for reasons of international treaty obligations, comity, judicial economy, and other exceptional circumstances").

Just as in *Mars*, Plaintiffs' Complaint should be dismissed under principles of international comity. Plaintiffs' request that this Court relitigate the registration, use and enforcement of Chinese trademark rights in China is a perfect example of why these principles exist.

## VII.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: March 5, 2021

Respectfully submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Adam W. Poff*

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

James R. Batchelder (*pro hac vice*)
James L. Davis, Jr. (*pro hac vice*)
**Ropes & Gray LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
T: 650-617-4000
F: 650-617-4090
James.Batchelder@ropesgray.com
James.L.Davis@ropesgray.com

Peter M. Brody (*pro hac vice*)
**Ropes & Gray LLP**
2099 Pennsylvania Ave., N.W.
Washington, DC 20006
T: (202) 508-4600
Peter.Brody@ropesgray.com

*Attorneys for Defendant Emerson Electric Co.*

## <u>CERTIFICATE OF SERVICE</u>

I, Adam W. Poff, hereby certify that on March 5, 2021, I caused to be electronically filed

a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to the

following counsel of record:

> Jeremy D. Anderson
> FISH & RICHARDSON P.C.
> 222 Delaware Avenue
> 17th Floor
> P.O. Box 1114
> Wilmington, DE 19899
> (302) 652-5070
> janderson@fr.com
>
> *Attorney for Plaintiffs*

I further certify that on March 5, 2021**,** I caused the foregoing document to be served via

electronic mail upon the above-listed counsel of record.

Dated: March 5, 2021

> YOUNG CONAWAY STARGATT &
> TAYLOR, LLP
>
> */s/ Adam W. Poff*
> Adam W. Poff (No. 3990)
> Robert M. Vrana (No. 5666)
> Rodney Square
> 1000 North King Street
> Wilmington, DE 19801
> 302-571-6600
> apoff@ycst.com
> rvrana@ycst.com
>
> *Attorneys for Defendant*

27675112.1