IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

EMERSON QUIET KOOL CO. LTD. and )
HOME EASY LTD., )
)
        Plaintiffs, )
)
  v. )    C.A. No. 20-1449-LPS-JLH
)
EMERSON ELECTRIC CO., )
)
        Defendant. )

**PLAINTIFFS' ANSWERING BRIEF**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiffs*

Dated: April 19, 2021

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF THE PROCEEDINGS .................................................................1

SUMMARY OF ARGUMENT ...............................................................................................1

CONCISE STATEMENT OF FACTS ....................................................................................2

ARGUMENT ..........................................................................................................................3

I.    Defendant's Rule 12(b)(6) Motion Fails Because the 2011 CA Precludes
Defendant's Actions in China and, Regardless, Plaintiffs Allege Breach Within
the United States .......................................................................................................3

    A.  Plaintiff Need Only State a Plausible Allegation of Breach ...................................3

    B.  All of Defendant's Arguments Fail Because Paragraph 6 of the 2011 CA is
Expressly Not Limited to Conduct in the United States .........................................4

        1.  A Preamble or Recital Does Not Limit Unambiguous Contract Terms
Under Missouri Law ..................................................................................6

        2.  If the Language Is Ambiguous, the Court Must Deny the Motion ...................8

    C.  Even If the Court Finds That "in the United States" Limits Paragraph 6,
Plaintiffs Still State a Claim of Breach ...................................................................8

    D.  Plaintiff's Non-Contract Claims Are Not Contingent on the 2011 CA
Encompassing Conduct in China ...........................................................................10

II.    Defendant Cannot Meet its *Forum Non Conveniens* Burden .......................................11

    A.  Defendant Cannot Show That China Is an Adequate Alternative Forum..............11

    B.  The Public and Private Interest Factors Favor Plaintiffs .......................................14

        1.  Plaintiffs' Choice to Bring Their Action in Their Home Forum Receives
"Great Deference"....................................................................................14

        2.  Defendant Cannot Show That the Private Interest Factors Tip Strongly in
Favor of the Defendant ............................................................................15

        3.  Defendant Cannot Show that the Public Interest Factors Tip Strongly in
Its Favor ..................................................................................................17

i

4.   Delaware Has a Local Interest in Enforcing Laws to Protect Its Corporate
     Citizens ....................................................................................................................18

III.   Defendant's Concerns of International Comity Ring Hollow .....................................19

CONCLUSION....................................................................................................................................20

**TABLE OF AUTHORITIES**

**Case(s)**                                                                                                **Page(s)**

*Aclate, Inc. v. Eclipse Mktg. LLC*, C.A. No. 20-576-RGA,
    2020 U.S. Dist. LEXIS 194894 (D. Del. Oct. 21, 2020) ........................................... 4

*Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi*,
    232 F. Supp. 3d 613 (D. Del. 2017) ...................................................................... 11

*Applied Materials v. Advanced Micro-Fabrication Equip.*, C.A. No. C 07-05248 JW,
    2008 U.S. Dist. LEXIS 137168 (N.D. Cal. Feb. 29, 2008) ...................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
    828 F. Supp. 2d 720 (D. Del. 2011) ..................................................................... 20

*Bhatnagar by Bhatnagar v. Surrendra Overseas*,
    52 F.3d 1220 (3d Cir. 1995) ............................................................................... 13

*City of St. Joseph v. Lake Contrary Sewer Dist.*,
    251 S.W.3d 362 (Mo. Ct. App. 2008) .................................................................. 9

*Cliffs-Neddrill Turnkey International-Oranjestad v. M/T Rich Duke*,
    734 F. Supp. 142 (D. Del. 1990) ......................................................................... 19

*Creel v. Ecolab, Inc.*, C.A. No. 12917-VCMR,
    2018 Del. Ch. LEXIS 520 (Ch. Oct. 31, 2018) ..................................................... 7

*Daily v. Daily*,
    912 S.W.2d 110 (Mo. Ct. App. 1995) .................................................................. 5

*Doe v. Ritz Carlton Hotel Co.*, LLC,
    666 F. App'x 180 (3d Cir. 2016) ......................................................................... 15

*Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*,
    C.A. No. 17-1846-LPS-JLH (D. Del. Dec. 22, 2017)........................................ 15, 18

*Friday v. Smoot*, 211 A.2d 594 (Del. 1965)..................................................................18

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply Inc.*, C.A. No. 2:96-CV-32-TS,
    U.S. Dist. LEXIS 18820 (N.D. Ind. Mar. 31, 1998) ............................................ 20

*Gulf Ins. Co. v. Noble Broad.*,
   936 S.W.2d 810 (Mo. 1997) ............................................................................ 5

*H.Y.C. v. Hyatt Hotels Corp.*, C.A. No. 15-887-RGA,
   2016 U.S. Dist. LEXIS 2029 (D. Del. Jan. 8, 2016)..................................... 12

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
   434 F. Supp. 2d 598 (N.D. Iowa 2006)....................................................... 10

*Johnston Assocs., Inc. v. Rohm and Haas Co.*,
   560 F. Supp. 916 (D. Del. 1983)................................................................. 18

*Kier Constr., Ltd. v. Raytheon Co.*, C.A. No. 19526,
   2005 Del. Ch. LEXIS 36 (Ch. Mar. 10, 2005) .............................................. 6

*Lacey v. Cessna Aircraft Co.*,
   862 F.2d 38 (3d Cir. 1988) ("Lacy I") ................................................. 12, 15

*Lacey v. Cessna Aircraft Co.*,
   932 F.2d 170 (3d Cir. 1991) ("Lacey II")........................................ 12, 14, 16, 19

*Linear Prods., Inc. v. Marotech, Inc.*,
   189 F. Supp. 2d 461 (W.D. Va. 2002) ........................................................ 20

*Lony v. E. I. Du Pont de Nemours & Co.*,
   886 F.2d 628 (3d Cir. 1989) ("Lony I").............................................. passim

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
   24 F.3d 1368 (Fed. Cir. 1994)..................................................................... 20

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
   825 F. Supp. 73 (D. Del. 1993).................................................................... 20

*Murray-Kaplan v. Nec Ins., Inc.*,
   617 S.W.3d 485, 2021 Mo. App. LEXIS 68 (Mo. Ct. App. 2021)............. 10

*My Size, Inc. v. Mizrahi*,
   193 F. Supp. 3d 327 (D. Del. 2016)............................................................ 17

*Orthotic & Prosthetic Lab, Inc. v. Pott*,
   851 S.W.2d 633 (Mo. Ct. App. 1993).......................................................... 7

*Pats Aircraft, LLC v. Munich*,
   197 F. Supp. 3d 663 (D. Del. 2016)............................................................ 19

iv

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................... 15, 16

*Roe v. Wyndham Worldwide, Inc.*, C.A. No. 18-1525-RGA,
   2020 U.S. Dist. LEXIS 24342 (D. Del. Feb. 12, 2020) ......................... 14

*S. Megga Telecomms. v. Lucent Techs.*, C.A. No. 96-357-SLR,
   1997 U.S. Dist. LEXIS 2312 (D. Del. Feb. 14, 1997) ........................... 12

*Schaffran v. Mt. Vernon-Woodberry Mills*,
   70 F.2d 963 (3d Cir. 1934) ...................................................................... 7

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ..................................................................... 9

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ............................................................................... 12

*Spruill v. Gillis*,
   372 F.3d 218 (3d Cir. 2004) ................................................................. 4, 8

*SRAM Corp. v. SunRace Roots Enter. Co.*,
   390 F. Supp. 2d 781 (N.D. Ill. 2005) .................................................... 10

*State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*,
   62 S.W.3d 485 (Mo. Ct. App. 2001) .................................................... 6, 7

*Synygy, Inc. v. ZS Assocs.*, No. 08-2355,
   2009 U.S. App. LEXIS 11777 (3d Cir. June 1, 2009) ............... 12, 14, 18

*Tech. Dev. Co. v. Onischenko*,
   174 F. App'x 117 (3d Cir. 2006) ........................................................... 13

*Tradimpex Egypt Co. v. Biomune Co.*,
   777 F. Supp. 2d 802 (D. Del. 2011) ...................................................... 14

*Travelers Indem. Co. v. Lake*,
   594 A.2d 38 (Del. 1991) ........................................................................ 18

*Triarch Indus. v. Crabtree*,
   158 S.W.3d 772 (Mo. 2005) .................................................................... 4

*Warner Tech. & Inv. Corp. v. Hou*, C.A. No. 13-7415-MAS-DEA,
   2014 U.S. Dist. LEXIS 178664 (D.N.J. Dec. 31, 2014) ........................ 12

*West v. Sharp Bonding Agency, Inc.*,
   327 S.W.3d 7 (Mo. Ct. App. 2010) ......................................................................... 8

*Wilmot v. Marriott Hurghada Mgmt.*,
   712 F. App'x 200 (3d Cir. 2017) ......................................................................... 12

*Wilmot v. Marriott Hurghada Mgmt.*, C.A. No. 15-618-RGA-MPT,
   2016 U.S. Dist. LEXIS 59592 (D. Del. May 5, 2016) ......................................... 12

*Windt v. Qwest Communs. Int'l, Inc.*,
   529 F.3d 183 (3d Cir. 2008) ................................................................................ 17

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) .................................................................................. 14

*Zazzali v. Swenson*, 852 F. Supp. 2d 438 (D. Del. 2012) .......................................... 16

**Statutes**
6 Del. C. § 2532 .......................................................................................................... 11

**Rules**
Federal Rule of Civil Procedure 12(b)(6) .............................................................. 3, 9

## <u>TABLE OF ABBREVIATIONS</u>

| Abbreviation | Term |
|---|---|
| Plaintiffs | Emerson Quiet Kool Co. Ltd., and Home Easy Ltd. |
| Emerson Quiet Kool or EQK | Emerson Quiet Kool Co. Ltd. |
| Defendant or Emerson Electric | Emerson Electric Co. |
| 2011 CA | The 2011 Consent Agreement, D.I. 1 Ex. 2 |
| Airwell Hong Kong Technologies Ltd. | Airwell |
| U.S. Patent & Trademark Office | United States Patent and Trademark Office |
| Federal Rule of Civil Procedure 12(b)(6) | Rule 12(b)(6) |

## NATURE AND STAGE OF THE PROCEEDINGS

Emerson Quiet Kool, a U.S. company, brought suit against Defendant Emerson Electric, another U.S. company, to stop Defendant's unlawful interference with Emerson Quiet Kool's business, including its relationships with its U.S. customers, and to remedy Defendant's deceptive trade practices.  Defendant registered an EMERSON QUIET KOOL mark in China—despite knowing of the long-standing and valid EMERSON QUIET KOOL trademark in the United States.  Then, in an effort to destroy Emerson Quiet Kool's U.S. business, Defendant used that mark to interfere with the manufacture and shipment of Emerson Quiet Kool's goods to the United States. Defendant intentionally caused confusion among consumers and Plaintiffs' U.S. retailers as to the ownership of the EMERSON QUIET KOOL trademark, and caused fear of legal action if those retailers sold Emerson Quiet Kool's products here.  Defendant's actions also breached a 2011 Consent Agreement in which Defendant specifically consented to the registration and use of the EMERSON QUIET KOOL trademark.

Defendant moves to dismiss, incorrectly arguing that Plaintiffs' claims—which are based in part on the 2011 CA—fail because some of Defendant's wrongful acts took place in China, and therefore cannot constitute a breach of the 2011 CA.  For the same reason, Defendant also argues that the United States is an inconvenient forum for a dispute between U.S.-based companies arising from interference with sales in the U.S. to U.S.-based customers.  Defendant's claims fail and its motion should be denied.

## SUMMARY OF ARGUMENT

1.     Plaintiffs' causes of action for unfair competition, tortious interference, and violation of the Delaware Deceptive Trade Practices Act are supported by the facts in the complaint and do not depend on breach of contract.

2.      Plaintiffs state a plausible claim that Defendant breached the 2011 CA when, among other things, it distributed goods bearing the EMERSON QUIET KOOL trademark and caused consumers to associate it with Emerson Quiet Kool or its goods or services, in breach of its obligation "not to promote, advertise, or distribute its . . . goods and/or services in any way that would lead consumers to associate it with the other party or its goods and/or services."  2011 CA, ¶ 6.

3.      Defendant's proposed interpretation of the 2011 CA as excluding any conduct outside of the United States is contrary to Missouri law and the plain meaning of the contract. Moreover, even if that interpretation were correct, Defendant's efforts to deprive Emerson Quiet Kool of its rights to use its trademark—after consenting to that trademark and its use—breached the covenant of good faith and fair dealing.

4.      Defendant fails to meet its burden to show that China is an adequate alternative forum under the law of *forum non conveniens*, and the case law indicates that no Chinese court can hear all of Plaintiffs' claims.  Defendant also fails to overcome the "great deference" afforded to Plaintiffs' choice of forum.  The private and public interest factors strongly favor litigation in the United States, which is the home forum of all parties and the location of most of the evidence.

## <u>CONCISE STATEMENT OF FACTS</u>

All parties are U.S. entities with their principal places of business within the United States. D.I. 1, ¶¶ 4-5.  The EMERSON QUIET KOOL mark was registered in 1979, and Defendant has known of the valid registration since at least 2009.  *Id.*, ¶¶ 9, 11-12.  Despite that knowledge, in a calculated effort to destroy Emerson Quiet Kool's U.S.-based business, Defendant registered various EMERSON QUIET KOOL trademarks in China, and promoted, advertised, and distributed goods with that mark.  *Id.*, ¶¶ 27, 29, 39.  It then commenced legal action there to prevent manufacture of Emerson Quiet Kool's products, and filed an action with the Zhongshan

2

Customs Office.  *Id.*, ¶¶ 24-26, 27, 32.  Shortly thereafter, the Port of Zhongshan detained Emerson Quiet Kool's goods that were bound for a U.S. customer, and Emerson Quiet Kool has since been unable to export any of its goods from the Port of Zhongshan into the United States.  *Id.*, ¶¶ 25-26, 30.

Defendant's actions disrupted Emerson Quiet Kool's business within the United States, including with its U.S.-based customers such as New York Appliances, Homedepot.com, and Walmart.com.  *Id.*, ¶¶ 30-31.  All of these domestic retailers and distributors decreased their orders, citing confusion as to the ownership of the EMERSON QUIET KOOL trademark and fear of legal action by Defendant.  *Id.*  Defendant's actions have caused confusion in the marketplace, including among consumers, retailers, and distributors of air conditioning units, and have resulted in millions of dollars in damages to Emerson Quiet Kool.[1]  *Id.*, ¶¶ 29, 32.

## ARGUMENT

### I. Defendant's Rule 12(b)(6) Motion Fails Because the 2011 CA Precludes Defendant's Actions in China and, Regardless, Plaintiffs Allege Breach Within the United States

The success of Defendant's motion hinges on its argument that the 2011 CA cannot be breached by activity outside of the United States, but the plain language of the agreement shows otherwise.  Moreover, Plaintiffs have plausibly alleged breach of contract and the covenant of good faith and fair dealing *within* the United States.  Thus, the Court must deny Defendant's motion.

#### A. Plaintiffs Need Only State a Plausible Allegation of Breach

In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the

---

[1] Plaintiffs dispute the accuracy of portions of Defendant's statement of facts, including its allegations regarding Plaintiffs' relationships with Home Easy Industrial Co. Ltd.  D.I. 8 at 4. However, the Court does not need to resolve Defendant's incorrect factual statements to decide this motion.

facts as pled in [the] complaint." *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). Plaintiffs

need only show that they pled "enough facts to state a claim to relief that is plausible on its face,"

i.e., enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 697 (2009).

As to the applicable law, Plaintiffs agree that Missouri contract law governs the breach of

contract and breach of the covenant of good faith and fair dealing claims.[2]  D.I. 8 at 5-6.

**B.**    **All of Defendant's Arguments Fail Because Paragraph 6 of the 2011
CA is Expressly Not Limited to Conduct in the United States**

A plain reading of the 2011 CA makes clear that the "in the United States" language does

not limit paragraph 6. D.I. 1, ¶ 37; 2011 CA, ¶ 6. Defendant relies primarily on a single recital in

the preamble to the agreement that specifically discusses only Airwell, the opposing party:

> This Consent Agreement . . . is entered into . . . by and between Emerson Electric
> Co. ("Emerson") . . . and **Airwell Hong Kong Technologies Ltd. ("Airwell")**, . . .
> concerning **Airwell's** use and registration of the **Airwell** Mark (as set forth below)
> in the United States.

2011 CA, at 1 (emphasis added).  This recital cannot limit the scope of the contract to activity

within the U.S., because that would conflict with the plain language of paragraph 6:

> 6. **Each party** agrees not to promote, advertise, or distribute its **respective goods
> and/or services** in any way that would lead consumers to associate it with the **other
> party** or its goods and/or services.

2011 CA, ¶ 6 (emphasis added).  Specifically, paragraph 6 states that it applies to "[e]ach party,"

making clear that the parties intended to bind *both* parties, not just Airwell. *See Triarch Indus. v.*

*Crabtree*, 158 S.W.3d 772, 776 (Mo. 2005) ("The guiding principle of contract interpretation

under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect

---

[2] The Court need not resolve any conflict of law issues as to the remaining claims at the motion to
dismiss stage. *Aclate, Inc. v. Eclipse Mktg. LLC*, C.A. No. 20-576-RGA, 2020 U.S. Dist. LEXIS
194894, at *7 (D. Del. Oct. 21, 2020).

to that intent.").  If the agreement were limited to "*Airwell's* use and registration of the Airwell Mark in the United States," as Defendant argues, then the "[e]ach party" language of paragraph 6 would be rendered meaningless, defeating the intent of the parties.  *See Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 814 (Mo. 1997) (stating that "every word in a contract is to be given meaning if possible").  In light of paragraph 6, the plain meaning of "concerning Airwell's use and registration of the Airwell Mark (set forth below) in the United States" is clear: it describes the circumstances of the agreement, including Airwell's U.S. Trademark Application and its effort to register its mark in the United States.

The same is true of the other language Defendant highlights, which describes the parties' respective U.S. trademark registrations and the fact that the U.S. Patent & Trademark Office cited Defendant's marks as a bar to registration of Airwell's.  D.I. 8 at 9.  None of that language states that the agreement as a whole or the parties' obligations under paragraph 6 are limited to the United States.  *Id.*  Moreover, the language highlighted by Defendant shows that the parties were capable of restricting their obligations to the United States when they so desired: paragraph 5 specifically consents to the registration and use of the "Airwell Mark" in the "Airwell Application," each of which is explicitly defined as a "*U.S.* Trademark Registration" or "*U.S.* Trademark Application." 2011 CA, ¶¶ 1-2 (emphasis added).  But the parties *did not* include such limiting language as to their obligations in paragraph 6.  *See Daily v. Daily*, 912 S.W.2d 110, 114 (Mo. Ct. App. 1995) (declining to limit a provision in a contract, and stating that "[i]f the parties had intended [to limit the provision] they would have expressly made such a limitation").

Additionally, the portion of the preamble that Defendant relies on concerns "*Airwell's* use and registration *of the Airwell Mark* . . . in the United States," and says nothing about limiting *Defendant's* obligations as to the use of its marks in the United States.  2011 CA, at 1 (emphasis

added).  Thus, even if the preamble were construed to limit paragraph 6, it would limit only *Airwell's* obligations, not Defendant's.

Ultimately, paragraph 6 explicitly encompasses promotion, advertising, and distribution of goods and services "**in any way**," with no geographic limitation.  2011 CA, ¶ 6 (emphasis added); *see State ex rel. Mo. Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 492 (Mo. Ct. App. 2001) ("A construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is preferred to one that leaves some of the provisions without function or sense.").  Thus, the plain language of the 2011 CA makes clear that the parties' agreement was not limited conduct in the United States.

### 1.   A Preamble or Recital Does Not Limit Unambiguous Contract Terms Under Missouri Law

Defendant's effort to construe the preamble and other recitals as limiting and use them to contradict the unambiguous language of the operative portion of the agreement is contrary Missouri law.  *See Maryville*, 62 S.W.3d at 492.  As the Missouri Court of Appeals explained, "contracts often . . . begin with a series of recitals or 'whereas' clauses describing the surrounding circumstances and the objectives of the parties."  *Id.*  Such recitals "shed light on the circumstances the parties wished to have considered in the interpretation of the contract."  *Id.*  However,

> The promise is what the parties agreed to do, and hence is the operative part of the instrument, while the recital states what led up to the promise and gives the inducement for making it.  When the explanation of the reason for the promise is at variance with the promise itself, **the latter, if clear and unambiguous, must prevail, as it is the transaction between the parties**.

*Id.* (emphasis added).[3]

---

[3] The cases cited by Defendants are consistent with this rule, and Defendant offers no authority stating that a recital will control over an unambiguous contract provision under Missouri law. *See* D.I. 8, at 9 n.4; *Kier Constr., Ltd. v. Raytheon Co.*, C.A. No. 19526, 2005 Del. Ch. LEXIS 36, *37-43 (Ch. Mar. 10, 2005) (reviewing statements in a preamble along with other language as one part of a multi-factor analysis of whether the parties intended to distinguish the phrase

Here, the 2011 CA begins with an initial series of recitals describing the identity of the parties and the surrounding circumstances, including that the agreement was made in the context of U.S. Patent & Trademark Office proceedings.  The first operative paragraph is paragraph 5, which begins "[a]ccordingly, Emerson hereby consents."  2011 CA, ¶ 5.

Defendant concedes that "the language of the contract is unambiguous." D.I. 8, at 10.  Plaintiffs agree: paragraph 6 unambiguously encompasses promotion, advertising, and distribution of goods and services "**in any way**," not just conduct of the parties within the United States.  2011 CA, ¶ 6 (emphasis added).  Nothing in paragraph 6 suggests any need to refer to other sources to determine whether it encompasses conduct outside of the United States.  As such, under Missouri law, the parties' recitals regarding the circumstances of the agreement do not affect the meaning of paragraph 6.  *Maryville*, 62 S.W.3d at 492.

In summary, the plain language of the agreement makes clear that it encompasses activity outside the United States, and the recitals are consistent with that language.  Even if they were not, they cannot be used to depart from the unambiguous plain and ordinary meaning of the operative portion of the agreement under Missouri law.  Thus, the contract encompasses activity in China,

"benefits and burdens" from "rights and obligations" when they had used both); *Creel v. Ecolab, Inc.*, C.A. No. 12917-VCMR, 2018 Del. Ch. LEXIS 520, at *10 (Ch. Oct. 31, 2018) (noting only that a recital "can be useful to explain the intended meaning of other terms," and finding the recitals at issue to be consistent with the operative language). In *Schaffran v. Mt. Vernon-Woodberry Mills*, the Third Circuit noted that "there might be difficulty in construing [the contract provision's] words" in isolation, but was able to do so after referring to a recital stating that the contract related to a "credit limits."  70 F.2d 963, 965-66 (3d Cir. 1934).  The plain language of the provision consisted of a guarantee covering "payment" of all "orders," and because the recital indicated that the parties "were dealing with debts," the court declined to extend that language to encompass "performance" of all "contracts."  *Id.* at 966.  In other words, the court in *Schaffran* did not import a limitation from the preamble into the operative part of the contract.  Lastly, the court in *Orthotic & Prosthetic Lab, Inc. v. Pott* held only that where the preamble identified an individual as a party to the contract, and the operative portion identified that individual's obligations, that individual was a party even if their signature line did not indicate that signed in their individual capacity. 851 S.W.2d 633, 640 (Mo. Ct. App. 1993).

and Defendant breached paragraph 6 when it promoted, advertised, and distributed products bearing the EMERSON QUIET KOOL mark there.  D.I. 1, ¶¶ 27, 37, 39.

### 2.     If the Language Is Ambiguous, the Court Must Deny the Motion

If the Court finds that the contract is ambiguous as to whether the "use of Airwell's mark within the United States" recital and the other recitals limits paragraph 6, then the meaning of the contract terms becomes a question of fact, not law, which must be resolved in favor of the plaintiff at the motion to dismiss stage.  *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 15 (Mo. Ct. App. 2010) ("Where the contract is ambiguous, . . . the intent of the parties must be established by extrinsic evidence and so a question of fact arises as to the intent of the parties to its meaning.") (quotation marks and citations omitted).  Plaintiffs alleged that Defendant breached this provision in part through its activity in China.  D.I. 1, ¶¶ 27, 37-39.  At this stage, the Court "must take [Plaintiffs'] factual allegations, and the reasonable inferences therefrom, as true."  *Spruill*, 372 F.3d at 238.  Thus, taking the factual allegations of the Complaint as true and making all reasonable inferences in Plaintiffs' favor, to the extent there is ambiguity, the Court must infer that the contract encompasses Defendant's activity in China and deny the motion.

### C.     Even if the Court Finds That "in the United States" Limits Paragraph 6, Plaintiffs Still State a Claim of Breach

Defendant's motion to dismiss also fails because the Complaint adequately alleges breach of the covenant of good faith and fair dealing *within the United States*.  Defendant consented to use of the EMERSON QUIET KOOL mark, including within the United States. D.I. 1, ¶¶ 13-15, 22-23.  Defendant then made a targeted effort to destroy Plaintiffs' U.S. business and its ability to use its trademark to sell its products here.  *Id.*, ¶¶ 3, 32.  Specifically, despite Plaintiffs' undisputed[4]

---

[4] Because the Court must accept facts and reasonable inferences in the pleading as true at this stage, *Spruill*, 372 F.3d at 223, Defendant cannot contest that the 2011 CA is not enforceable by Plaintiffs.  D.I. 1, ¶¶ 22-23, ¶¶ 34-39.  Nor has Defendant offered any facts to support its vague

right under the 2011 CA to use the EMERSON QUIET KOOL mark here, Defendant nonetheless filed an action with the Zhongshan Customs Office in the Port of Zhongshan in May 2018.[5]  *Id.* at ¶ 25.  As a result, Plaintiffs have been unable to receive their goods, depriving them of the benefit of their bargain, and "Defendant has been unjustly enriched by destroying a competitor ***in the United States***."[6]  *Id.*, ¶¶ 26, 72.  This includes at least one shipment bound for Plaintiffs' customer New York Appliances in the United States.  *Id.*, ¶ 30.  Other U.S. retailers with consumer-facing websites like Homedepot.com and Walmart.com have also decreased their orders, "citing confusion as to the ownership of the EMERSON QUIET KOOL trademark."  *Id.*, ¶ 31.

Thus, the Complaint alleges facts sufficient to state a plausible claim that Defendant breached the implied covenant of good faith and fair dealing.  Defendant breached by consenting to the use of the EMERSON QUIET KOOL mark in the United States but then acting in bad faith to register, renew, and assert an EMERSON QUIET KOOL mark in China in an effort to prevent Emerson Quiet Kool from actually *using* its mark in the U.S., thus "deny[ing] [EQK] the expected benefit of the contract."  *City of St. Joseph*, 251 S.W.3d at 370 (quotation marks and citation omitted); *see* D.I. 1, ¶ 43.

---

assertions about enforceability.

[5] Defendant asserts that it applied for the first Chinese EMERSON QUIET KOOL trademark in 2010, before the 2011 CA.  D.I. 8, at 3-4.  The relevance of Defendant's allegation is unclear because, as Defendant recognizes, D.I. 8 at 2 n.2, it is outside of the pleadings and may not be considered on a motion to dismiss.  *See Schmidt v. Skolas*, 770 F.3d 241, 249, 253 (3d Cir. 2014) (reversing dismissal after the lower court erred by considering documents attached to a motion to dismiss under Rule 12(b)(6)).  Regardless, Defendant's own exhibit shows that it registered *additional* EMERSON QUIET KOOL marks in 2017-2018.  *Id.*, Ex. 5, at 41-42.

[6] "Missouri law implies a covenant of good faith and fair dealing in every contract," which "prohibits [a] contracting party from . . . evad[ing] the spirit of the transaction or [acting] to deny the other party the expected benefit of the contract."  *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 369-70 (Mo. Ct. App. 2008) (quotation marks and citation omitted).

**D.**     <u>Plaintiffs' Non-Contract Claims Are Not Contingent on the 2011 CA</u>
<u>Encompassing Conduct in China</u>

Plaintiffs' non-contract claims, set forth in Counts III-VII, do not depend on their breach

of contract claim.   Defendant's only objection to those claims is that they require "unlawful,"

"unfair," "wrongful," or "deceptive" conduct that must be supplied by the breach of contract claim.

However, to the extent those elements are required, they are satisfied by Defendant's bad-faith

conduct in registering the mark in China, and then using that mark in a targeted effort to deprive

EQK of the benefit of its bargain and to wrongfully interfere with Plaintiffs' ability to use their

valid U.S. trademark in the United States.

Specifically, Plaintiffs' tortious interference, unjust enrichment,[7] and unfair competition

claims are supported by, *inter alia*, Plaintiffs' allegations regarding Defendant's use of the Chinese

mark to interfere with EQK's lawful right to use its longstanding mark within the United States

and its efforts to cause confusion among U.S. customers as to the ownership of Plaintiffs' U.S.

trademark, despite knowing of that mark's validity.[8]   *See Ideal Instruments, Inc. v. Rivard*

*Instruments, Inc.*, 434 F. Supp. 2d 598, 626-27 (N.D. Iowa 2006) (denying motion to dismiss claim

alleging tortious interference with business relations based on defendant's false assertions to

plaintiff's customers that their products infringed the defendant's patent, absent any contract

between the parties); *SRAM Corp. v. SunRace Roots Enter. Co.*, 390 F. Supp. 2d 781, 783-85 (N.D.

Ill. 2005) (denying motion to dismiss tortious interference claim based on the defendant's foreign

---

[7] Setting aside the issue of which state's law applies to Plaintiffs' unjust enrichment claim, Plaintiffs properly pled that claim in the "[a]lternative[.]" D.I. 1, ¶ 71; *see Murray-Kaplan v. Nec Ins., Inc.*, 617 S.W.3d 485, 2021 Mo. App. LEXIS 68, at *21 (Mo. Ct. App. 2021) (reversing dismissal because "a petition may plead a claim for unjust enrichment as an alternative to breach of contract.").

[8] Defendant does not dispute in its motion that the Court must assume at this stage that Plaintiffs had a lawful U.S. trademark at the time of Defendant's actions.

patent infringement action and threats to purchasers of plaintiff's product "for distribution in the United States"). Finally, Plaintiffs' claim under the Delaware Deceptive Trade Practices Act is supported by, among other things, the acts listed in the complaint at paragraphs 66-68. *See, e.g.*, 6 Del. C. § 2532 ("A person engages in a deceptive trade practice when . . . that person . . . [c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services [or a] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another").[9]

Thus, regardless of how the contract is construed, Plaintiffs have stated a claim of breach of the covenant of good faith and fair dealing within the U.S., and Plaintiffs' non-contract claims have bases in Defendant's wrongful actions outside of its breach of contract.[10]

## II.   **Defendant Cannot Meet Its *Forum Non Conveniens* Burden**

Defendant's *forum non conveniens* argument fails because it cannot show that China is an adequate alternative forum, and because the private and public interest factors favor Plaintiffs.

### A.   **Defendant Cannot Show That China is an Adequate Alternative Forum**

Under controlling Third Circuit precedent, Defendant cannot satisfy its burden to show that China is an adequate alternative forum simply by stipulating to process there. Defendant relies on a single district court case, *Path to Riches, LLC v. CardioLync, Inc.*, 290 F. Supp. 3d 280 (D. Del. 2018) (McHugh, J.), for the proposition that the Court may dismiss Plaintiffs' claims without any affirmative showing by Defendant that those claims are cognizable in any other forum. D.I. 8, at

---

[9] Defendant's citation to *Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi*, 232 F. Supp. 3d 613 (D. Del. 2017), is inapposite. That case involved a domain name dispute among competitors in Turkey; here, Plaintiffs' allegations show that Defendant specifically targeted and interfered with Plaintiffs' rightful use of their trademark in the United States, causing confusion, mistake or deception as to the source, origin, sponsorship or approval of the Defendant's products.

[10] To the extent the Court dismisses any claims, Plaintiffs respectfully request leave to amend.

15.  But "'[i]t is settled that the defendant bears the burden of persuasion as to **all elements** of the forum non conveniens analysis,'" including that "an adequate alternative forum exists." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("Lacey II") (emphasis added) (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988) ("Lacey I")).  And "[a]n alternative forum is generally adequate *if the plaintiff's claim is cognizable in the forum's courts*." *Wilmot v. Marriott Hurghada Mgmt.*, 712 F. App'x 200, 203 (3d Cir. 2017) (non-precedential) ("Wilmot II) (emphasis added); *see Synygy, Inc. v. ZS Assocs.*, No. 08-2355, 2009 U.S. App. LEXIS 11777, at *5 (3d Cir. June 1, 2009) (nonprecedential) (vacating dismissal after lower court found an alternative forum adequate without considering "whether [it] *recognizes the causes of action*" (emphasis added)).[11]

Here, Defendant fails to even *name* its proposed alternative forum, instead broadly referring to "China" or "Chinese courts."  D.I. 8, at 14-15.  It offers no evidence that Plaintiffs' claims are cognizable in *any* other forum.  Defendant's cases are inapplicable[12] and, regardless,

---

[11] Other judges in the District of Delaware have also required defendants to show cognizability. *See Wilmot v. Marriott Hurghada Mgmt.*, C.A. No. 15-618-RGA-MPT, 2016 U.S. Dist. LEXIS 59592, at *4 (D. Del. May 5, 2016) ("Wilmot I") ("The movant bears the burden of demonstrating [that] the subject matter of the suit must be cognizable in the alternative forum."); *H.Y.C. v. Hyatt Hotels Corp.*, C.A. No. 15-887-RGA, 2016 U.S. Dist. LEXIS 2029, at *4-5 (D. Del. Jan. 8, 2016) (holding that defendant bears the burden to show "there is a cause of action in the alternative forum which provides the plaintiff redress for his injury").

[12] None of Defendant's cited opinions state that Plaintiffs' breach of contract claims are cognizable in China, let alone address Plaintiffs' tortious interference or Delaware Deceptive Trade Practices Act claims.  In *S. Megga Telecomms. v. Lucent Techs.*, C.A. No. 96-357-SLR, 1997 U.S. Dist. LEXIS 2312, *40-41 (D. Del. Feb. 14, 1997), the parties did not dispute the cognizability issue.  Likewise, in addressing a negligent misrepresentation claim in *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007) the court held only that the lower court need not condition dismissal on a stipulation to jurisdiction in the alternative forum, because jurisdiction had already "been raised, determined, and affirmed on appeal."  Finally, *Warner Tech. & Inv. Corp. v. Hou*, C.A. No. 13-7415-MAS-DEA, 2014 U.S. Dist. LEXIS 178664, *10 (D.N.J. Dec. 31, 2014) addressed "plaintiff's concern over the application of New Jersey law in China," not whether its breach-of-contract claim was cognizable, and is irrelevant to the present issue.

mere citation to cases is insufficient to meet Defendant's burden. *Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220, 1228-29 (3d Cir. 1995) (holding that "it was [defendant's] burden to prove that India was a viable alternative forum," and that even if "'every other court which has considered this issue has found that India courts do provide an adequate alternative forum in the forum non conveniens context,'" that "would be irrelevant to the issue of whether [defendant] met its burden of proof" to show the adequacy of the alternative forum here) (citation omitted).

Moreover, at least one court has suggested that tortious interference with contract claims are *not* cognizable under Chinese law, and Defendant offers nothing to show that Plaintiffs' other non-contract claims are cognizable there. *Applied Materials v. Advanced Micro-Fabrication Equip.*, C.A. No. C 07-05248 JW, 2008 U.S. Dist. LEXIS 137168, at *23 (N.D. Cal. Feb. 29, 2008) (denying motion to dismiss under *forum non conveniens* after noting that "the Court is concerned that China may not provide an adequate remedy for Plaintiff's intentional interference with a contract claim"). Nor does Defendant even argue that that any court in China can award an adequate *remedy*, including the requested damages and injunctive relief. *See id.*; D.I. 8, at 14-15; *Tech. Dev. Co. v. Onischenko*, 174 F. App'x 117, 120 (3d Cir. 2006) (vacating dismissal where lower court did not address the remedies available in the alternate forum). There is no reason to assume that any unspecified court in China would be willing to enjoin a U.S. company from interfering with the use of another U.S. company's trademark *in the United States* based on a consent agreement filed in a *U.S. intellectual property proceeding* before a *U.S. government agency*, or be willing to address tortious interference or deceptive trade practices claims between U.S. entities where the harm is felt in the United States.

13

**B.**     **The Public and Private Interest Factors Favor Plaintiffs**

Even if Defendant had identified an adequate alternative forum, it cannot meet its burden of proving that the "balance of the relevant factors tip[s] 'strongly in favor of the defendant'" such that they overcome the "great deference" afforded to a domestic plaintiff's choice of forum. *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) ("*Lony I*"); *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011).

     **1.**     **Plaintiffs' Choice to Bring Their Action in Their Home Forum Receives "Great Deference"**

A domestic plaintiff's choice of forum is given "great deference." *Lony I* at 633; *see Roe v. Wyndham Worldwide, Inc.*, C.A. No. 18-1525-RGA, 2020 U.S. Dist. LEXIS 24342, at *14 (D. Del. Feb. 12, 2020) ("Where a plaintiff is not foreign, her choice of forum is accorded 'great deference.'") (quoting *Lony I*). It is undisputed that Plaintiffs are domestic plaintiffs. D.I. 8, at 19. Defendant cannot support its argument that Plaintiffs' forum choice deserves less deference because their principal place of business is located in New Jersey rather than Delaware.[13]

First, under Third Circuit law, a domestic plaintiff's choice of forum is afforded "great deference" even if it is not a resident of the district court in which the case was brought. *See Synygy*, 2009 U.S. App. LEXIS 11777, at *6 ("an American company [is] given great deference in its choice of an American forum") (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000)); *Wiwa*, 226 F.3d at 103 ("[t]he benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides").

---

[13] Defendant cites *Path to Riches*, but in that case Judge McHugh awarded less deference largely because the plaintiff brought a derivative claim on behalf of a foreign real party in interest. D.I. 8, at 19; *Path to Riches*, 290 F. Supp. 3d at 288-91. The court nonetheless "impos[ed] a 'more stringent burden' on defendants by requiring them to establish 'a strong preponderance in favor of dismissal.'" *Id.* at 291 (quoting *Lacey II*, at 179).

Second, "a strong showing of convenience" results in full deference to even a foreign plaintiff's choice of forum. *Lony I*, at 634-35. Here, Plaintiffs brought their action in the District of Delaware based on their incorporation here, but also because of Defendant's own pending suit against Plaintiffs in this district, *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*, C.A. No. 17-1846-LPS-JLH (D. Del. Dec. 22, 2017) (the "Emerson Action"). It is far more convenient for Plaintiffs to litigate one set of lawsuits, subject to one set of rules, than it would be to litigate multiple suits across multiple forums. Moreover, both Plaintiffs' principal places of business are in Fairfield, New Jersey, just over two hours from the courthouse. *See* Ex. A. Due to the co-pending suit, Delaware is not just a convenient forum—it is the *most* convenient jurisdiction for Plaintiffs to litigate in, and Plaintiffs' choice of forum deserves full deference.[14]

### 2.       Defendant Cannot Show That the Private Interest Factors Tip Strongly in Favor of the Defendant

To merit dismissal, Defendant must prove that "trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . ***out of all proportion to plaintiff's convenience***,' or [that] the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Lacey I*, at 42 (emphasis added) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

Here, the private interest factors favor retention. Most importantly, the Court should not credit Defendant's allegation that this forum is oppressive "out of all proportion" to Plaintiffs' convenience when Defendant *itself* chose this forum to litigate a breach of contract claim involving the *same contracts* between the *same parties* in 2017. *See* Emerson Action, D.I. 1, ¶¶ 100-08.

---

[14] Defendant's argument regarding to the location of the operative facts and circumstances is irrelevant to the amount of deference owed to a plaintiff's choice of forum. *Doe v. Ritz Carlton Hotel Co.*, LLC, 666 F. App'x 180, 183 (3d Cir. 2016).

15

Regardless, the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses" all favor trial in the United States. *Piper*, 454 U.S. at 235 n.6 (quotation marks and citation omitted). This case concerns a dispute between U.S.-based companies arising, in part, from the breach of a contract signed in the United States, which resulted in damages to Plaintiffs within the United States. Plaintiffs expect to rely on witnesses and documents located within the United States to prove their claims, and much of that evidence would be unavailable in China. Specifically, the complaint focuses on confusion created in the marketplace and other impacts *within the United States*, including among third-party U.S. retailers and distributors such as New York Appliances, Homedepot.com and Walmart.com. D.I. 1, ¶¶ 30-31, ¶¶ 53-63; ¶¶ 64-69. Defendant offers nothing to show that *any* of these essential third-party witnesses and documents would be within the reach of any Chinese court. That alone is sufficient for Plaintiffs to prevail. *Lacey II*, at 174 ("If Lacey would not have access to *essential* evidence at trial in [the alternative forum], we believe that the court must deny defendants' motions to dismiss.").

The other private interest concerns laid out by Defendant likewise favor trying Plaintiffs' claims in this forum. The Chinese evidence Defendant cites is primarily documentary in nature and is easily sent electronically. *See Zazzali v. Swenson*, 852 F. Supp. 2d 438, 451-52 (D. Del. 2012) (Stark, J.) (finding the location of location of physical records to be a neutral factor in a transfer analysis, because the "mere existence of books and records which are not in electronic form does not change the fact that such materials can be scanned and produced at trial in either forum if necessary"). Further, Plaintiffs expect to show that Defendant's actions in China were

16

directed from the United States, so the primary witnesses will be U.S. personnel for whom the United States would be a far more convenient forum than China.[15]

Moreover, litigation in China would entail interpreters for English-speaking witnesses and would substantially burden the parties by requiring translations of the contracts between the parties and of the contracts with third parties that Defendant tortiously interfered with. *See My Size, Inc. v. Mizrahi*, 193 F. Supp. 3d 327, 335 n.9 (D. Del. 2016) (noting that the "substantial burden" of translating a contract in a *forum non conveniens* analysis, citing the conflicting translations of a Hebrew contract, and dismissing the action for litigation in a Hebrew-speaking forum).[16]

### 3.   Defendant Cannot Show that the Public Interest Factors Tip Strongly in Its Favor

Defendant ignores the United States' interest in the case, and instead focuses exclusively on the District of Delaware.  But the Third Circuit has held that Court should also consider the United States' interest. *Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 191-92 (3d Cir. 2008).

Here, the United States has an overriding interest, while China has little if any.  Plaintiffs' contract claims involve an agreement between U.S. companies impacting retailers and others in the United States, signed in the context of an intellectual property dispute before a U.S. government agency.  Plaintiffs also allege tortious interference with business relations and wcontracts between multiple U.S.-based companies, and violation of the Delaware Deceptive Trade Practices Act. Defendant has not articulated any interest China would have in hearing breach of contract and tortious interference claims between U.S. companies, or in deceptive trade practices by a U.S.

---

[15] Moreover, most of the relevant evidence is already in Defendant's possession.

[16] Defendant's final argument, that Plaintiffs have strong ties to China and should be forced to litigate their case there, is again contrary to Third Circuit law. *Lony I*, at 640 (holding that it was "inappropriate as a matter of law" for the Court to "focus[] on whether or not [Plaintiff] would be unduly inconvenienced by its dismissing the case, rather than on whether [Defendant] would be unduly burdened and oppressed by its retaining jurisdiction in the United States").

company targeted at the United States.[17]  Defendant claims that China is the locus of the alleged

culpable conduct, but that conduct was targeted at (and likely directed from) the United States.[18]

4. **Delaware Has a Local Interest in Enforcing Laws to Protect Its**
**Corporate Citizens**

Plaintiffs assert claims under Delaware law, and Delaware has a local interest in affording

relief to its corporate citizens, and in enforcing Delaware statutes.  *Synygy*, 2009 U.S. App. LEXIS

11777, at *6 (vacating dismissal after lower court "neglected to consider [the state's] interest in

affording relief to its own ostensible corporate citizens"); *Lony I*, at 643 (a claim under a Delaware

statute "favors Delaware law and therefore weighs in favor of retaining jurisdiction").  Plaintiffs'

claims involve little if any Chinese law.  Plaintiffs seek damages and an injunction on *enforcement*

of Plaintiffs' mark, via claims based on U.S. law.  Defendant cites *Johnston Assocs., Inc. v. Rohm*

*and Haas Co.*, 560 F. Supp. 916 (D. Del. 1983) for the principle that the law of the place of conduct

applies to the tortious interference claims, but that case relies on the *lex loci delicti* choice of law

standard, which has long since been replaced in Delaware with a Restatement-based choice of law

analysis.  *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46 (Del. 1991) ("Thus, we overrule *Friday*

*v. Smoot*[, 211 A.2d 594 (Del. 1965)] and its automatic *lex loci delicti* choice of law standard.").

Under the Restatement, the United States has a more significant relationship to the action than

China, for the reasons stated herein.  *See id.*, 47-48 (outlining "most significant relationship" test).

---

[17] Moreover, Defendant argues that the agreement does not encompass its actions in China at all, and that all of Plaintiffs' claims turn on the agreement.  Defendant cannot in good faith argue that China has the greatest interest in enforcing the 2011 CA, while also maintaining that the 2011 CA does not encompass conduct in China.

[18] The litigation pending in China means little as compared to the more relevant litigation pending in this forum.  Defendant describes the "parallel" Chinese litigation as relating to "trademark cancellation" and a customs enforcement.  D.I. 8, at 4, 18.  Neither action addresses the claims asserted here.  Defendant also ignores the co-pending dispute in the District of Delaware, C.A. No. 18-1746, where it filed a complaint involving the 2011 CA.  *See* Emerson Action, D.I. 1, ¶¶ 100-08.  Because both forums involve related litigation, this factor is neutral at best.

In sum, the key documents and much of the evidence are in English, and the United States and Delaware have a far greater interest than China in a dispute between U.S. companies that impacts other U.S. entities. These factors outweigh all countervailing interests identified by Defendant,[19] and Defendant therefore cannot make the "strong showing of convenience" necessary to overcome the "great deference" afforded to Plaintiffs' choice of forum. *Lony I*, at 633-35.

## III.   <u>Defendant's Concerns of International Comity Ring Hollow</u>

Defendant's comity concerns are unwarranted and unsupported by the cases it cites. "Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict. . . .   [T]he appropriate procedure is to permit both jurisdictions to proceed." *Pats Aircraft, LLC v. Munich*, 197 F. Supp. 3d 663, 673-75 (D. Del. 2016) (summarizing international comity case law, and denying motion to stay proceedings) (quoting *Cliffs-Neddrill Turnkey International-Oranjestad v. M/T Rich Duke*, 734 F. Supp. 142, 151 (D. Del. 1990)). "Federal district courts may abstain from hearing cases and controversies only under exceptional circumstances." *Id.* at 674 (quotation marks and citation omitted).

Defendant identifies no such exceptional circumstances here. Plaintiffs' claims arise exclusively from Defendant's violation of U.S. law. The proceedings Defendant identifies are not "parallel proceedings" on these issues; they address trademark infringement and validity, instead of Plaintiffs' rights under U.S. law, and seek different relief. Moreover, Defendant itself asserted breach of the parties' consent agreements *in this court* before any proceedings in China. *See* Emerson Action, D.I. 1, ¶¶ 100-08.[20]

---

[19] The Court must weigh the factors, rather than counting them, and one significant factor can outweigh multiple less significant factors. *See Lacey II*, at 182 (stating that "we view the task of balancing the Gulf Oil private and public interest factors as essentially qualitative, not quantitative," and that "depending on the case, some factors are 'more equal' than others").

[20] Defendant's cases on this point are easily distinguishable. As clarified by the Federal Circuit,

Plaintiffs do not intend to ask the Court to decide issues of infringement or invalidity of foreign IP rights; instead, Plaintiffs seek to enjoin a U.S. defendant from using intellectual property in ways that violate Plaintiffs' rights under U.S. law and the parties' U.S. agreement.  Thus, the Court should reject Defendant's unsupportable concerns of international comity.

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendant's motion.

*/s/ Andrew E. Russell*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiffs*

Dated:  April 19, 2021

---

the plaintiff in *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73 (D. Del. 1993) asked the Court to hear an actual foreign patent infringement claim involving complex issues of Japanese law, not an unfair competition claim; the plaintiff had merely *compared* it to such a claim to establish jurisdiction.  *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373-75 (Fed. Cir. 1994).  Plaintiff in *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 724 (D. Del. 2011) likewise asked the Court to hear a foreign trademark infringement claim applying foreign law, not to hear U.S. law claims.  Finally, the Court in *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply Inc.*, C.A. No. 2:96-CV-32-TS, U.S. Dist. LEXIS 18820, at *25-26 (N.D. Ind. Mar. 31, 1998) merely recognized a foreign patent judgment on the basis of *res judicata*, which has no relevance to the present dispute.

Defendant relies on *Linear Prods., Inc. v. Marotech, Inc.*, but the court in that case *declined* a motion to stay based on international comity, citing three factors that are equally applicable here: "(1) the producer did substantial business in the United States and had valuable trademark rights there [like EQK]; (2) the American complaint included only U.S. causes of action [like the complaint here], (3) trademark laws are territorial and exist according to the terms of each country's law."  189 F. Supp. 2d 461, 466 (W.D. Va. 2002) (citation omitted).