**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

EMERSON QUIET KOOL CO. LTD., and
HOME EASY LTD.,

Plaintiffs,

v.

EMERSON ELECTRIC CO.,

Defendant.

C.A. No. 20-cv-1449-LPS

**JURY TRIAL DEMANDED**

**DEFENDANT EMERSON ELECTRIC CO.'S**
**REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

Dated: May 10, 2021

ROPES & GRAY LLP

James R. Batchelder (*pro hac vice*)
James L. Davis, Jr. (*pro hac vice*)
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
(650) 617-4000
James.Batchelder@ropesgray.com
James.L.Davis@ropesgray.com

Peter M. Brody (*pro hac vice*)
2099 Pennsylvania Ave., N.W.
Washington, DC 20006
(202) 508-4600
Peter.Brody@ropesgray.com

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. PLAINTIFFS FAIL TO STATE A CLAIM ON ALL COUNTS ........ 2

A. Plaintiffs Fail to State a Claim of Breach for Which Relief Can Be Granted ........ 3

B. Registering, Using & Enforcing Foreign Marks Is Not Unfair or in Bad Faith ........ 5

III. CHINESE COURTS, THE CURRENT FORUM FOR THIS DISPUTE, SHOULD BE FAVORED UNDER *FORUM NON CONVENIENS* ........ 6

A. The Existing Forum in China Is Adequate and Available ........ 6

B. Private Interest Factors Favor Resolution of the Dispute in China ........ 7

C. Public Interest Factors Favor Resolution of the Dispute in China ........ 8

D. Any Deference Due to Plaintiffs' Forum Choice Has Been Overcome ........ 9

IV. INTERNATIONAL COMITY INDEPENDENTLY WARRANTS DISMISSAL ........ 9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daily v. Daily*,
912 S.W.2d 110 (Mo. Ct. App. 1995)....3

*Delta Air Lines, Inc. v. Chimet, S.P.A.*,
619 F.3d 288 (3d Cir. 2010)....8

*Eurofins Pharma US Holdings v. Bioalliance Pharma*,
623 F.3d 147 (3d Cir. 2010)....6, 8

*Fuji Photo Film. Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*,
754 F.2d 591 (5th Cir.) ....1

*Hilton v. Guyot*,
159 U.S. 113 (1895)....10

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
434 F. Supp. 2d 598 (N.D. Iowa)....5

*Ingenohl v. Walter E. Olsen & Co.*,
273 U.S. 541 (1927)....3

*Kisano Trade & Invest Ltd. v. Lemster*,
737 F.3d 869 (3d Cir. 2013)....9

*Lacey v. Cessna Aircraft Co.*,
862 F.2d 38 (3d Cir. 1988)....8

*Lockman Found. v. Evangelical All. Mission*,
930 F.2d 764 (9th Cir. 1991) ....7

*Melaleuca, Inc. v. Kot Nam Shan*,
Case No. 4:18-cv-00036-DCN, 2018 WL 1952523 (D. Idaho April 24, 2018) ....7

*Metrc, LLC v. Steelman*,
617 S.W.3d 472 (Mo. Ct. App. 2021)....4

*Paraschos v. YBM Magnex Int'l, Inc.*,
130 F. Supp. 2d 642 (E.D. Pa. 2000) ....10

*Path to Riches, LLC v. CardioLync, Inc.*,
290 F. Supp. 3d 280 (D. Del. 2018)....8, 9

*Pats Aircraft, LLC v. Munich*,
197 F. Supp. 3d 663 (D. Del. 2016)....................10

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)....................6, 7

*SRAM Corp. v. SunRace Roots Enter. Co.*,
390 F. Supp. 2d 781 (N.D. Ill. 2005)....................5

*Trotter v. 7R Holdings LLC*,
873 F.3d 435 (3d Cir. 2017)....................7

**Other Authorities**

Law Against Unfair Competition of the People's Republic of China, Apr. 23, 2019,
Chapter II....................6
Chapter IV....................7

Civil Code of the People's Republic of China, Jan. 1, 2021,
Article 142....................7
Article 179....................7
Article 577....................7
Chapter XXIX....................7

Trademark Law of the People's Republic of China, Apr. 23, 2019,
Article 65....................7

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Certified Translation of May 6, 2020 People's Republic of China Intermediate People's Court of Zhongshan City, Guangdong Province Civil Judgment |
| 2 | Trademark Electronic Search System (TESS) Result, U.S. Trademark Registration No. 111,931 |
| 3 | Complaint, *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*, Case No. 1:17-cv-01846, Dkt. 1, December 22, 2017 |
| 4 | Trademark Law of the People's Republic of China, Art. 31 (2013) available at https://www.wipo.int/edocs/lexdocs/laws/en/cn/cn195en.pdf |
| 5 | Feb. 22, 2021 Letter Brief of Emerson Quiet Kool Co. Ltd. and Home Easy Ltd., *Emerson Electric Co. v. Emerson Quiet Kool Co. Ltd.*, Case No. 1:17-cv-01846, Dkt. 104, February 22, 2021 |
| 6 | Certified Translation of April 24, 2020 CNIPA Re-examination Decision Regarding Cancellation of No. 8571479 "EMERSON QUIET KOOL" Trademark |
| 7 | Dun & Bradstreet Report re: Emerson Quiet Kool Co. Ltd. |
| 8 | Dun & Bradstreet Report re: Home Easy Ltd. |
| 9 | Dun & Bradstreet Report re: Home Easy Industrial Co. Limited Corporate Family Structure |
| 10 | Dun & Bradstreet Report re: Home Easy Industrial Co., Limited |
| 11 | HomeEasy Industrial Co "Global Marketing" Page, available at http://www.homeeasy.net/#/sales |
| 12 | Certified Translation of Jan. 2, 2020 CNIPA Decision re Registration of the No. 25323977 "EMERSON QUIET KOOL" Trademark |
| 13 | Certified Translation of Mar. 26, 2020 CNIPA Decision re Invalidation Application against No. 29560444 "Emerson Quiet Kool" trademark |
| 14 (New) | Certified Translation of HomeEasy's Mar. 29, 2021 Supplementary Evidence List, submitted to the Guangdong High Court |
| 15 (New) | J. McCarthy, Trademarks and Unfair Competition §18:79 (5th ed.) |
| 16 (New) | Trademark Manual of Examining Procedure ("TMEP") § 1207.01(d)(viii), available at https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1200d1e6229.html |
| 17 (New) | Law Against Unfair Competition of the People's Republic of China, Apr. 23, 2019, available at https://wipolex.wipo.int/en/text/547027 |
| 18 (New) | Trademark Law of the People's Republic of China, Apr. 23, 2019, available at |

| Exhibit No. | Description |
|---|---|
| | https://wipolex.wipo.int/en/text/579988 |
| 19 (New) | Civil Code of the People's Republic of China, Jan. 1, 2021, available at http://www.npc.gov.cn/englishnpc/c23934/202012/f627aa3a4651475db936899d69419d1e/files/47c16489e186437eab3244495cb47d66.pdf |

## I. INTRODUCTION

Trademark rights are defined by jurisdiction; they are not global. Indeed, "[t]he concept of territoriality is basic to trademark law; trademark rights exist in each country according to that country's statutory scheme." *Fuji Photo Film. Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir.) (citing *Ingenohl v. Walter E. Olsen & Co.*, 273 U.S. 541, 544 (1927)). The accused conduct does not prevent or interfere with Plaintiffs' use of their *U.S.* marks in the *U.S., e.g.*, by manufacturing or applying their marks to products in the U.S. *See* Compl. ¶ 31; Compl. Ex. 2 ("2011 Agreement"); Opp. at 9, 10. Rather, Plaintiffs assert their goods should be permitted to infringe *Chinese* trademarks in *China* before shipping the goods to the U.S. in order to use the U.S. marks in the U.S.—that is not the law and certainly not provided for in the 2011 Agreement.

Both Defendant Emerson Electric and Plaintiff Emerson Quiet Kool Co., Ltd. ("EQK") have marks in the U.S. and China, among other countries. These are *separate* rights. The 2011 Agreement unambiguously covers only the parties' U.S. rights because it repeatedly references only U.S. marks. There is nothing inconsistent—nor unfair or in bad faith—about agreeing to a party's use of a mark in one geography, but not another. That is precisely what was done here when both parties consented in 2009 and 2011 to the other's registration of certain applications in the U.S. Compl. Ex. 1 ("2009 Agreement"); 2011 Agreement. Neither agreement addressed the signatories' trademark rights elsewhere around the world. As Plaintiffs concede, the Complaint's counts each depend on a purported failure to receive the "benefit of [Plaintiffs'] bargain" under the 2011 Agreement (Opp. at 9, 10). Because Plaintiffs fail to identify a breach a contract or a violation of U.S. law, Plaintiffs fail to state a claim and the Complaint should be dismissed. Plaintiffs seek leave to amend if dismissal is granted, but no amendment can cure the deficiencies.

Plaintiffs' strategy is clear: they seek a second bite of the apple after having litigated and lost in China—the proper forum for this dispute. Plaintiffs argue that their choice of forum is owed

such deference that it outweighs all other *forum non conveniens* factors. That is not the law. Moreover, Plaintiffs already chose to litigate this dispute in China—they simply do not like the result, which is why they and their parent did not raise these allegations in response to Emerson Electric's July 2018 complaint for EQK's trademark infringement filed in the Intermediate People's Court of Zhongshan City, Guangdong Province ("Zhongshan Court"), or during the Port of Zhongshan's seizure of EQK's goods in 2018. *See* Compl. ¶ 25; Brief in Support of Motion to Dismiss ("MTD") at 4. Rather, Plaintiffs filed this Complaint only after their parent entity (*see* MTD at 4) received an unfavorable verdict that Emerson's Chinese marks were valid and that Plaintiffs infringed them. Given that China is the undisputed situs of the alleged acts and the proper forum, the Complaint should be dismissed for *forum non conveniens*.

In addition, Plaintiffs ask this Court to adjudicate whether the enforcement of Chinese trademark rights in China violates U.S. law—the very reason the principle of international comity exists. Tellingly, Plaintiffs fail to disclose to this Court that, in March 2021, Plaintiffs' parent asked the Guangdong High Court to suspend the appeal of the Zhongshan Court decision pending the result of this litigation because it is "directly related" to the issues being litigated in China (Ex. 14 at 2)—further illustrating that their Complaint here is merely an attempt to relitigate Plaintiffs' losses in China. Thus, international comity independently warrants dismissing the Complaint.

## II. PLAINTIFFS FAIL TO STATE A CLAIM ON ALL COUNTS

Plaintiffs fail to state a claim on all counts, both because their causes of action each depend on a violation of the 2011 Agreement, which they cannot identify, and because the enforcement of foreign trademark rights outside the U.S. does not violate U.S. law. Not only is the 2011 Agreement limited to behavior in the U.S., but Emerson Electric's use of its Emerson Quiet Kool mark in China cannot violate Plaintiffs' alleged U.S. trademark rights—those are *two separate rights*. Under Plaintiffs' theory, the enforcement abroad of any foreign trademark rights that

adversely impact a U.S. company gives rise to a cause of action under U.S. law. This is not the law. The right to use a mark in the U.S. does not provide a right to use the mark outside the U.S., and vice-versa. *Fuji*, 754 F.2d at 599; *Ingenohl*, 273 U.S. at 544 (discussing Hong Kong marks).

Beyond their breach of contract count, Plaintiffs base the remaining six counts on Plaintiffs allegedly not getting the "benefit of [their] bargain" from the 2011 Agreement (Opp. at 9, 10)—confirming that each count is based on such alleged breach. Plaintiffs' allegation that Emerson "wrongly interfere[d] with Plaintiffs' ability to use their valid U.S. trademark in the United States" further confirms Plaintiffs' failure to state a claim. *Id.* Without a breach, Plaintiffs identify no basis for their assertion that the enforcement of Chinese trademarks in China violates U.S. law.

**A. Plaintiffs Fail to State a Claim of Breach for Which Relief Can Be Granted**

Ignoring that the 2011 Agreement addresses only U.S. rights, Plaintiffs' breach of contract argument wrongly focuses solely on whether the "in the United States" clause in the agreement's introductory paragraph is limiting. Opp. at 4-5; Compl. Ex. 2. As the China National Intellectual Property Administration ("CNIPA") already found when EQK raised this argument concerning the scope of the 2009 Agreement in the Chinese invalidation proceedings, the agreement does not address rights in "China or the world"—it is limited to the U.S. MTD Ex. 13 at 10.

Perhaps because the 2011 Agreement is even more clearly limited to rights "in the United States," EQK never cited the agreement to the CNIPA. Like the 2009 Agreement, the 2011 Agreement repeatedly and solely discusses the parties' *U.S.* trademark registrations and applications. MTD at 8-10. The agreement references neither party's rights in other countries—including Emerson Electrics' Emerson Quiet Kool mark registered *in 2010*. *Id.*[1] Thus, as a whole,

[1] *Daily v. Daily* is inapposite—there, defendant sought to limit a contractual provision based on an example included in one operative provision. 912 S.W.2d 110, 114 (Mo. Ct. App. 1995). Unlike in *Daily*, here the 2011 Agreement as a whole indicates it is limited to the U.S.

the contract makes clear that it governs only the parties' U.S. rights and U.S. conduct. The introductory paragraph further supports this reading, as it indicates that the agreement concerns "Airwell's use and registration of the Airwell Mark…*in the United States.*" Compl. Ex. 2.[2] *See Metrc, LLC v. Steelman*, 617 S.W.3d 472, 484 (Mo. Ct. App. 2021) (finding that "as a whole," the contract was unambiguous and did not support plaintiff's reading based "on an isolated passage").

Consent agreements such as these arise when the USPTO refuses registration of an application for U.S. trademark in light of a prior third-party registration. The applicant may submit an agreement by which the third party consents to the registration of the application. Ex. 15 at 1, J. McCarthy, Trademarks and Unfair Competition §18:79 (5th ed.). The USPTO accords substantial weight to consent agreements that detail why the parties believe that no confusion exists and specify arrangements for avoiding confusing the public. Ex. 16 at 1, TMEP §1207.01(d)(viii).

That is precisely what happened here—and that is *all* that happened here—as indicated in the Complaint. Specifically, Airwell, EQK's alleged predecessor-in-interest, sought to register the mark EMERSON QUIET KOOL for certain goods. *See* Compl. ¶ 14. The USPTO issued a refusal of registration, citing existing Emerson Electric registrations of EMERSON for certain other goods. *Id.*; 2011 Agreement ¶¶ 1-3. Airwell sought, and obtained, Emerson Electric's limited consent to the registration of the mark shown in Airwell's application—the 2011 Agreement, which included the necessary representations that the parties did not anticipate confusion to arise from the limited use of the mark *in the United States* contemplated by the agreement (*see* ¶¶ 4, 6). That agreement most certainly did *not* provide a basis for Airwell, much less EQK, to sue

[2] Plaintiffs loosely label this introductory paragraph a "recital," but cite no case law demonstrating that courts in Missouri construe such paragraphs without "whereas…" clauses as recitals. Opp. at 6. In any event, Plaintiffs do not dispute that recital language can reflect a contract's meaning when consistent with the operative language. *See* MTD at 9 (citing cases).

Emerson Electric for purported confusion caused by activity *in any other country*, nor would the existence or absence of such confusion be at all relevant to the clear purpose of the consent agreement, given that trademark rights are inherently territorial. *Fuji*, 754 F.2d at 599; *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 969-70 (Fed. Cir. 2007) (foreign registration "not probative").

Plaintiffs suggest that Paragraph 6 of the 2011 Agreement functions in isolation as a standalone global obligation. The terms of a contract must be read "as a whole, not in isolation." *Metrc*, 617 S.W.3d at 481. To pry that boilerplate provision from this simple U.S. trademark consent agreement and construe it to forbid Emerson Electric from using or protecting its mark in *any* jurisdiction in the world in a manner that Plaintiffs could allege would harm their U.S. commercial interests would do violence to the clear purpose and effect of the 2011 Agreement.

**B. Registering, Using & Enforcing Foreign Marks Is Not Unfair or in Bad Faith**

Beyond any purported breach of contract, there is no basis for Plaintiffs to allege that registering, using and enforcing foreign trademark rights in a foreign country constitute bad faith or unfair, tortious conduct.[3, 4] Plaintiffs highlight Emerson Electric's "regist[ration of] the mark *in China*" and "fil[ing of] an action," and apparently argue U.S. law is violated when the enforcement abroad of foreign trademark rights adversely impacts a U.S. company. Opp. at 9-10. But Plaintiffs misstate the law. Even if Plaintiffs had been harmed in the U.S. by enforcement abroad of foreign trademarks, this would not mean there was unfair or unlawful conduct cognizable in the U.S. Plaintiffs cite no case supporting such an assertion, and have failed to state a claim for any count.

---

[3] Plaintiffs' cited cases on tortious interference are inapposite because they involved U.S. intellectual property rights (*SRAM Corp. v. SunRace Roots Enter. Co.*, 390 F. Supp. 2d 781, 783-85 (N.D. Ill. 2005)) or tortious actions taken in the U.S. by defendants (*Ideal Instruments, Inc. v. Rivard Instruments, Inc*., 434 F. Supp. 2d 598, 626–27 (N.D. Iowa 2006)). *SRAM* also discusses whether a court has *jurisdiction* over a suit involving U.S. and foreign patents, not whether allegations regarding enforcement abroad of foreign intellectual property suffice to state a claim.

[4] Plaintiffs do not contest that only "wrongful" interferences constitute unfair competition, and foreign enforcement/use of trademark rights does not meet this standard. MTD at 12 (citing cases).

## III. CHINESE COURTS, THE CURRENT FORUM FOR THIS DISPUTE, SHOULD BE FAVORED UNDER *FORUM NON CONVENIENS*

Chinese courts are not only the most convenient forum for this dispute—Plaintiffs also already chose to litigate this dispute there. Plaintiffs already brought three trademark challenges and defended against enforcement proceedings related to this dispute in China. MTD at 4-5. Only after the CNIPA and Zhongshan Court issued unfavorable rulings did Plaintiffs bring the present suit. *Id.* These Chinese courts are adequate and available forums for the ongoing disputes, and the private and public factors weigh in favor of dismissal under the doctrine of *forum non conveniens*.

### A. The Existing Forum in China Is Adequate and Available

These Chinese courts are more than adequate and available—they are already the current forum for this dispute. In addition to the trademark enforcement action, EQK filed trademark cancellation, reexamination, and opposition and invalidity proceedings before the CNIPA where it unsuccessfully argued the 2009 Agreement should bar the Chinese trademarks. MTD at 4-5.

Plaintiffs overstate the burden necessary to demonstrate that courts in China are adequate alternative forums. While Emerson Electric has the burden of persuasion regarding the *forum non-conveniens* analysis, it is well-established that other countries are adequate alternative forums unless the remedy offered by the other forum is "clearly unsatisfactory." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Eurofins Pharma US Holdings v. Bioalliance Pharma*, 623 F.3d 147, 161 (3d Cir. 2010); MTD at 14-15. Plaintiffs do not contest the cognizability of any count in Chinese courts other than tortious interference.[5] And even for tortious interference, U.S.

[5] Indeed, Chinese courts recognize causes of action for breach of contract and of implied covenant of good faith and fair dealing, unjust enrichment, and unfair competition, and provide for remedies of damages, costs, and injunction. Ex 17 at 4-5, 12-19, Law Against Unfair Competition of the People's Republic of China, Apr. 23, 2019, Ch. II (discussing "acts of unfair competition"), Ch. IV (discussing remedies including damages and costs awarded), Ch. IV (damages in the Trademark Law may be applicable for unfair competition suits involving trademarks), available at https://wipolex.wipo.int/en/text/547027; Ex. 18 at 22, Trademark Law of the People's Republic of

courts have found China's court system adequate where, as here, the same remedies are available under the other asserted causes of action. *E.g., Melaleuca, Inc. v. Kot Nam Shan*, No. 4:18-cv-00036, 2018 WL 1952523, at *6 (D. Idaho April 24, 2018) (finding China was an adequate forum "even if [a] tortious interference claim was unavailable" because remedies allowed recovery of requested damages under contract claims). Even if one of multiple counts were not cognizable, courts have nonetheless dismissed where "possible recovery on the other tort and contract claims" was not "so clearly inadequate or unsatisfactory that it is no remedy at all." *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768-69 (9th Cir. 1991) (quoting *Piper Aircraft*, 454 U.S. at 254); *see also Trotter v. 7R Holdings LLC*, 873 F.3d 435, 441–42 (3d Cir. 2017) (confirming dismissal under FNC even though foreign court did not have same strict liability standard for injury as the U.S.). Chinese courts are not "clearly unsatisfactory"—they are available and adequate.

**B. Private Interest Factors Favor Resolution of the Dispute in China**

Because the issues in this case are already being litigated in China, including through EQK's involvement in the CNIPA proceedings and EQK's parent's involvement in the Zhongshan Court action, Emerson Electric would be unduly burdened by litigating these issues for a second time in this Court. Moreover, the relevant evidence and witnesses are mainly in China.

Plaintiffs argue that the evidence in China is mainly documentary, but concede translation is a "substantial burden" (Opp. at 17) that would make trial difficult, burdensome, and expensive. *Piper Aircraft*, 454 U.S. at 241 n.6; MTD at 15-16. Additionally, Plaintiffs fail to address the large amount of non-documentary evidence and Mandarin-speaking witnesses located in China,

---

China, Apr. 23, 2019, Article 65 (allowing injunctions for trademark infringement), available at https://wipolex.wipo.int/en/text/579988; Ex. 19 at 25-26, 33, 107, 177, Civil Code of the People's Republic of China, Jan. 1, 2021, Article 142 (discussing the "principle of good faith"), Article 179, 577 (discussing remedies including "perform[ing] obligations" and compensation), Chapter XXIX (discussing unjust enrichment), available at http://www.npc.gov.cn/englishnpc/c23934/202103/c487476d061844beb093bc3f22e729ae/files/4aaa35619b4c446dbc704f4376bfccd6.pdf.

including the relevant Emerson Electric personnel, Chinese manufacturers, Port of Zhongshan employees, and evidence regarding EQK's own air conditioner units purportedly held in the Port of Zhongshan. Compl. ¶ 25. Plaintiffs also point to purported evidence regarding U.S. customers including HomeDepot.com and Walmart.com, but Plaintiffs provide no link between the alleged confusion in the U.S. and Emerson Electric's accused conduct in China. Indeed, as the situs of the alleged conduct, the essential evidence at trial is predominantly in China.

### C. Public Interest Factors Favor Resolution of the Dispute in China

Plaintiffs do not contest that "the locus of the alleged culpable conduct" controls for the public interest factors. *Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 294 (3d Cir. 2010); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988); *Path to Riches, LLC v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 294 (D. Del. 2018); MTD at 17. Here, that locus is indisputably China. The mere fact that some alleged injuries were felt in the U.S. cannot outweigh China's interest—given that the accused conduct and the other portion of the alleged injuries occurred there. Any interest of the U.S. is outweighed by China's overwhelming interest in adjudicating these claims, which focus on the registration/use/enforcement of Chinese marks in China, the seizure of infringing goods in China, and findings of trademark infringement in China.

Likewise, the parties' active parallel litigation in China weighs in favor of dismissal to avoid "the possibility of incongruous results stemming from parallel actions." *Eurofins*, 623 F.3d at 163. Plaintiffs do not contest that adjudicating this dispute in parallel to the Chinese actions would waste judicial resources and increase court congestion unnecessarily. Instead, Plaintiffs point to a "co-pending dispute" between the parties (Ex. 3). But, as demonstrated by Plaintiffs' decision to not raise the counts in its Complaint as compulsory counterclaims, Emerson Electric's enforcement of its U.S. trademark rights in the earlier case is unrelated to its enforcement of its Chinese trademark rights in China. In contrast, EQK's parent's March 2021 request to stay the

appeal from the Zhongshan Court ruling pending resolution of this lawsuit (Ex. 14 at 2) demonstrates that allowing Plaintiffs' Complaint here to move forward risks incongruous results. Plaintiffs should not be allowed to use this Court to relitigate their court losses in China.

### D. Any Deference Due to Plaintiffs' Forum Choice Has Been Overcome

Plaintiffs argue that their choice of forum should be given deference, but the U.S. is not their first choice of forum. Plaintiffs have already been litigating the same issues involved in this action in China—including by bringing three separate proceedings before the CNIPA and by defending against the enforcement proceedings in the Zhongshan Court. Plaintiffs filed suit in the U.S. only after receiving unfavorable decisions in those proceedings.

Likewise, Plaintiffs do not contest that in the Third Circuit, any presumption of deference favoring a domestic plaintiff's chosen forum is overcome when "the balance of the public and private interests clearly favors an alternative forum." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (citation omitted); MTD at 18-19. Because the private and public interest factors readily demonstrate that Delaware is not a convenient forum for this dispute concurrently being litigated in China, any presumption of convenience normally awarded to domestic entities is overcome. This case involves Chinese trademarks, purportedly wrongful actions occurring in China, and alleged damages occurring in China. There is no "bona fide" connection to Delaware beyond Plaintiffs' state of incorporation—which is not sufficient. *See Path to Riches*, 290 F. Supp. 3d at 283, 291 (dismissing case under similar circumstances); MTD at 19.

## IV. INTERNATIONAL COMITY INDEPENDENTLY WARRANTS DISMISSAL

Plaintiffs' state law claims are a thinly-veiled attempt to override the outcome of multiple proceedings in China involving Plaintiffs and EQK's parent. Plaintiffs seek to relitigate, asking this Court to overrule the registration and enforcement of Emerson Electric's Chinese marks after receiving unfavorable rulings in China. These constitute more than "exceptional circumstances"

under which a court should abstain from hearing a case under the doctrine of international comity. *See Pats Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 674 (D. Del. 2016).

Under Plaintiffs' argument, causes of action are created under U.S. law where enforcement of foreign trademark rights in a foreign country adversely impacts a U.S. company's ability to use its U.S. trademarks in the U.S. or interferes with the U.S. company's ability to conduct business (*e.g.*, because infringing products cannot be manufactured and shipped from a foreign country). Not only do Plaintiffs cite no basis for such an assertion, but this also runs directly contrary to the core tenets of international comity. *See Hilton v. Guyot*, 159 U.S. 113, 164 (1895); *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp. 2d 642, 645 (E.D. Pa. 2000) (noting international comity is "deference to [a] foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation").

Plaintiffs' reliance on *Pats* for the argument that the Chinese actions and this action should proceed in parallel directly conflicts with its recent request to stay the Chinese actions (Ex. 14 at 2). Moreover, just as in *Pats*, litigation regarding Chinese trademark rights should take place in China, and litigation regarding U.S. trademark rights should take place in the U.S. *Pats*, 197 F. Supp. 3d at 673-75. The parties here had been litigating the Chinese trademark infringement in China (Ex. 1) and the U.S. trademark infringement in this Court (Ex. 3). Contrary to *Pats*, which did not involve a U.S. court analyzing the propriety of foreign trademark registration or infringement, Plaintiffs' new Complaint here "result[s] in conflict" as Plaintiffs seek a determination that the enforcement of Emerson Electric's Chinese marks in China violates U.S. law. *See* MTD at 20 (citing cases). Moreover, unlike *Pats* where the stay was denied given the early stage of foreign proceedings, Plaintiffs here filed their Complaint only after losing in China.

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: May 10, 2021

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*

Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
rvrana@ycst.com

James R. Batchelder (*pro hac vice*)
James L. Davis, Jr. (*pro hac vice*)
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
(650) 617-4000
James.Batchelder@ropesgray.com
James.L.Davis@ropesgray.com

Peter M. Brody (*pro hac vice*)
ROPES & GRAY LLP
2099 Pennsylvania Ave., N.W.
Washington, DC 20006
(202) 508-4600
Peter.Brody@ropesgray.com

*Attorneys for Defendant Emerson Electric Co.*

**CERTIFICATE OF SERVICE**

I, Adam W. Poff, hereby certify that on May 10, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Karen E. Keller
Andrew E. Russell
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com

*Attorneys for Plaintiffs*

I further certify that on May 10, 2021, I caused the foregoing document to be served via electronic mail upon the above-listed counsel of record.

Dated: May 10, 2021

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600
apoff@ycst.com
rvrana@ycst.com

*Attorneys for Defendant*